# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 15, 2012

Lyle W. Cayce
Clerk

No. 11-50450

CITY OF EL PASO, TEXAS,

Plaintiff-Appellee

v.

EL PASO ENTERTAINMENT, INC., A Texas Corporation, doing business as Foxy's Nightclub, doing business as Foxy's; JEDJO INC., A Texas Corporation, doing business as The Lamplighter, doing business as Lamplighter Lounge; CR&R, INC., A Texas Corporation; EL TAPATIO, INC., A Texas Corporation; Y&F, INC., A Texas Corporation,

Defendants-Appellants

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:07-cv-00380-KC

Before KING, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Defendants-Appellants are Texas corporations involved in the ownership or operation of two sexually-oriented businesses. The corporations ended litigation with City of El Paso with an agreed judgment that permitted the operation of the businesses despite their non-compliance with City ordinances

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50450

as long as they "remain[ed] in operation at their current locations by their current owners and operators." Following the sale of all the shares in one of the corporations, the City sued the corporations for a declaratory judgment that the agreed judgment was no longer in effect. The district court granted summary judgment in favor of the City. The corporations now appeal. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case principally concerns the definition of the terms "owners and operators" in an Agreed Judgment between the City of El Paso and several Defendant–Appellant corporations. These corporations are El Paso Entertainment, Inc. ("El Paso Entertainment"), JEDJO Inc. ("JEDJO"), CR&R Inc. ("CR&R"), El Tapatio, Inc., and Y&F, Inc. (collectively, "Defendants"). Defendants are all Texas corporations involved in either the ownership or management of two sexually-oriented businesses ("SOBs") in the City of El Paso, Foxy's Nightclub and Lamplighter Lounge ("the nightclubs").

In 1978, the City adopted a series of adult business zoning ordinances, seeking to regulate the location of such businesses. In 1988 the City passed Ordinance 9326, which amended § 20.08.080 of the City Code, and provided for the amortization—a period for businesses to recover their investments—and eventual discontinuation of nonconforming adult business by a particular date. In relevant part, Ordinance 9326 provided that "[n]o person shall own, operate or conduct any business in an adult bookstore, adult motion picture theater or nude live entertainment club that is located within one thousand feet of the following [locations]." The Ordinance also defined the terms "operator" and "owner":

3.    Operator.

    The manager or other natural person principally in charge of an adult business regulated in this section.

4.    Owner or Owners.

2

No. 11-50450

The proprietor if a sole proprietorship, all partners (general and limited) if a partnership, or all officers, directors and persons holding ten percent (10%) of the outstanding shares if a corporation.

The passage of the Ordinance resulted in litigation between the City and several adult business owners, including Marc Diedrich ("Diedrich") who owned two SOBs, Lamplighter Lounge and Red Flame. The litigation was resulted in a 1993 injunction against the City. *Woodall v. City of El Paso*, 49 F.3d 1120 (5th Cir. 1995); *Woodall v. City of El Paso*, 959 F.2d 1305 (5th Cir. 1992); *Woodall v. City of El Paso*, 950 F.2d 255 (5th Cir. 1992). In 1994, while the injunction in the *Woodall* litigation was being appealed to the Fifth Circuit, El Paso Entertainment, the corporation that owns Foxy's Nightclub and in which Diedrich was the sole shareholder, brought a suit under 42 U.S.C. § 1983 against the City to challenge the constitutionality of the City's regulations regarding SOBs, including § 20.08.080.[1] The district court granted partial summary judgment to El Paso Entertainment and allowed the proceedings to continue onto the issue of damages. However, in 1995, before damages could be resolved, the City and El Paso Entertainment entered into an Agreed Judgment ("the Agreed Judgment" or "Judgment"), which "enjoined [the City] from the enforcement of any adult business ordinances against" Defendants for so long "as the businesses [i.e., Foxy's Nightclub and Lamplighter Lounge] remain in operation at their current locations *by their current owners and operators*." (emphasis added). The parties appended Chapter 20.62 of the City Code—which deals with nonconforming uses of property within the City—to the Agreed Judgment, explicitly incorporating it by reference.

---

[1] Defendants argued that the ordinance violated their rights under the First and Fourteenth Amendments of the United States Constitution, as well as Article 1, § 8 of the Texas Constitution. *See City of El Paso, Tex. v. El Paso Entm't, Inc.*, 535 F. Supp. 2d 813, 815 (W.D. Tex. 2008).

No. 11-50450

When this Agreed Judgment was entered, El Paso Entertainment operated Foxy's Nightclub, subleasing the physical property from CR&R. Similarly, JEDJO, another Defendant corporation, operated Lamplighter Lounge and also leased the property from CR&R.[2] At this time, Diedrich was the sole shareholder of both El Paso Entertainment and JEDJO. In 1996, following the entry of the Agreed Judgment, however, Diedrich sold all of his shares in both El Paso Entertainment and JEDJO to Dean Reiber ("Reiber"). Reiber had no involvement with the litigation leading to the Agreed Judgment and played no role in the settlement negotiations.

In 2007, the City enacted a new ordinance, Ordinance 016624, which imposed further licensing requirements and conduct regulations on SOBs. On November 1, 2007, the City filed a complaint against Defendants in federal district court seeking a declaratory judgment that the Agreed Judgment no longer barred the enforcement of Ordinance 016624 against Foxy's Nightclub and Lamplighter Lounge. On October 16, 2008, the City amended its complaint to seek a declaratory judgment that the Agreed Judgment was no longer in effect because Diedrich's sale to Reiber constituted a change of the business's "current owners and operators."

On May 5, 2009, the district court granted the City's motion for summary judgment, finding that the terms "owners and operators" in the Agreed Judgment referred to natural persons. The court concluded that ownership of both nightclubs had changed because the ownership of their parent companies had changed, and therefore that the Agreed Judgment no longer applied. The Fifth Circuit vacated this judgment, holding, *inter alia*, that the agreed

---

[2] While CR&R owns the physical property on which Foxy's Nightclub is located, it leases the physical property on which Lamplighter Lounge is located from Y&F, Inc., which was formerly known as El Tapatio, Inc. Neither Y&F nor El Tapatio played a significant role in the litigation underlying this appeal.

4

No. 11-50450

judgment was ambiguous with respect to the terms "owners and operators." *City of El Paso, Tex. v. El Paso Entm't, Inc.*, 382 F. App'x 361, 369 (5th Cir. 2010). The court remanded the case to district court to conduct a full hearing and allow the parties to present extrinsic evidence on this issue. *Id.*

On remand, Defendants filed a motion requesting that the evidentiary hearing take place before a jury. The City opposed this motion, and on October 18, 2010, the district court denied Defendants' motion. The hearing was held on December 17, 2010, with both the City and Defendants presenting extrinsic evidence in the form of documents and testimony regarding the meaning of the terms "owners and operators" in the Agreed Judgment. The district court issued its findings of fact and conclusions of law on May 11, 2011, determining that the parties intended for the terms "owners and operators" to mean individual and natural persons in the context of the Agreed Judgment. The district court also entered a declaratory judgment in favor of the City, determining that Foxy's Nightclub and Lamplighter Lounge no longer had legal, non-conforming uses at their locations and that the City could enforce Ordinance 016624 against the nightclubs. Defendants timely appealed the district court's judgment.

## II. DISCUSSION

### A. The district court's denial of Defendants' motion for a jury.

Defendants first appeal the district court's denial of their request that the hearing regarding the meaning of the terms "owners and operators" take place before a jury. Federal Rule of Civil Procedure 38 makes clear that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." FED. R. CIV. P. 38(a); *see also* U.S. CONST. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."). Whether Defendants are entitled to a jury trial under the Seventh Amendment is a question of constitutional interpretation, *Tull v. United*

5

No. 11-50450

*States*, 481 U.S. 412, 417–18 (1987), and the district court's determination that Defendants were not entitled to a jury trial is subject to de novo review. *United Healthcare Ins. Co. v. Davis*, 602 F.3d 618, 624 (5th Cir. 2010). The district court analogized the Agreed Judgment to a consent decree, concluding that because consent decrees are equitable in nature, their interpretation is a matter to be resolved by the court, not a jury.

The Seventh Amendment provides for the right to a jury trial in cases that are legal in nature, but not for those which are equitable in nature. *Ross v. Bernhard*, 396 U.S. 531, 533 (1970). If a statute does not expressly grant the right to a jury trial, then a court "must examine both the nature of the action and of the remedy sought. First, [it must] compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. . . . Second, [it must] examine the remedy sought and determine whether it is legal or equitable in nature." *Tull*, 481 U.S. at 417–18. "[A]n action for declaratory relief can be either legal or equitable, depending upon whether the action is simply an inverted lawsuit for legal relief or the counterpart of a suit in equity." *Terrell v. DeConna*, 877 F.2d 1267, 1273 (5th Cir. 1989).

Agreed judgments are not distinguishable from consent decrees, and so we treat the two under equivalent interpretive principles. *See Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1496 n.17 (5th Cir. 1992). Consent decrees have a "'hybrid nature' between judgment and contract." *Ruiz v. Estelle*, 161 F.3d 814, 822–23 (5th Cir. 1998) (quoting *Local No. 93, Int'l Assoc. of Firefighters, AFL-CIO v. City of Cleveland*, 478 U.S. 501, 519 (1986)). Thus, "[w]hen interpreting a consent decree, general principles of contract interpretation govern." *Dean v. City of Shreveport*, 438 F.3d 448, 460 (5th Cir. 2006). The determination of whether a contract is ambiguous is left to the court while the interpretation of a contract found to be ambiguous is left to the jury.

6

*U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 404 (5th Cir. 2000). However, "[c]onsent decrees are judgments despite their contractual nature . . . ." *United States v. Alcoa, Inc.* 533 F.3d 278, 288 (5th Cir. 2008).

The most relevant case on this issue is *In re Corrugated Container Antitrust Litigation*, 752 F.2d 137 (5th Cir. 1985). In that case, a plaintiff in a class action antitrust suit filed a motion seeking an order from the district court to compel a defendant to pay an amount fixed in a consent decree. *Id.* at 140. The defendant sought a jury trial on the plaintiff's motion to enforce the consent decree, but the district court denied this request and the Fifth Circuit affirmed its decision. *Id.* at 144–45. The panel observed that if the original antitrust case had gone to trial, both parties would have been entitled to a jury determination on questions of fact relating to their antitrust claims. *Id.* at 144. However, the plaintiff's motion to compel enforcement of the consent decree raised different issues, "aris[ing] solely from steps taken to enforce the district court's decree and concern[ing] only matters that bear on the meaning of that decree which is in effect a final judgment ordering [the defendant] to make the payments called for in the note." *Id.* The panel noted that while there was mixed precedent as to whether an action to enforce a judgment was equitable in nature, the plaintiff's motion to enforce the judgment did not trigger a Seventh Amendment right to a jury:

> When a party seeks enforcement of a decree in a class action, the issues raised, whether factual or legal, are incident to the principal dispute and arise only after resolution of that dispute. *We see no reason to divorce the power to interpret and enforce a judgment incorporating and ordering performance of a settlement agreement from the court that rendered it.* To do so would not only delay the conclusion of the class action, but would lead the trial court into a procedural maze, for the enforcement proceeding would presumably be treated as a brand new action, with new pleadings, new motions, and new pretrial procedures.

*Id.* (emphasis added). The panel, therefore, concluded that the defendant was not entitled to have a jury decide the remaining issues of fact. *Id.* at 145.

*Corrugated Container* controls here. Defendants have conflated the use of contract principles for the purpose of interpretation with the underlying "nature of the action," which is what governs whether there is a right to a jury trial. *Tull*, 481 U.S. at 417. The fact that consent decrees are interpreted under contract principles does not necessitate that they be likewise treated as contracts for Seventh Amendment purposes: "Because of [their] dual character [as judgments and contracts], consent decrees are treated as contracts for some purposes but not for others." *ITT Cont'l Baking Co.*, 420 U.S. at 237 n.10. Accordingly, we hold that it was not error for the district court to decline to empanel a jury to decide the meaning of the consent decree.

**B. The district court's interpretation of the Agreed Judgment.**

Defendants also appeal the district court's determination that the terms "owners and operators" in the Agreed Judgment refer to natural persons on three related grounds: (1) the court erred in finding that the City intended the terms "owners and operators" to mean natural persons; (2) the court erred in finding that Defendants intended the terms "owners and operators" to mean natural persons; and (3) the district court misread the plain language of the Agreed Judgment. We consider each in turn, first outlining the relevant standard of review.

"When interpreting a consent decree, general principles of contract interpretation govern," *Dean v. City of Shreveport*, 438 F.3d 448, 460 (5th Cir. 2006), though it is important to remember that while "[a] consent decree is akin to a contract[,] [it] also functions as an enforceable judicial order." *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 349 (5th Cir. 1998); *see also United States v. City of Miami, Fla.*, 664 F.2d 435, 439 (5th Cir. 1981) ("A consent decree, although founded on the agreement of the parties, is a judgment.").

"While the interpretation of an unambiguous contract is a question of law that this Court reviews de novo, the interpretation of an ambiguous contract is a question of fact that is reviewed for clear error." *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 406 (5th Cir. 2006) (citing *Stinnett v. Colo. Interstate Gas Co.*, 227 F.3d 247, 254 (5th Cir. 2000)).  Clear error review means that "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74 (1985). "A finding is clearly erroneous if a review of the record leaves a definite and firm conviction that a mistake has been committed." *Boudreaux v. United States*, 280 F.3d 461, 466 (5th Cir. 2002) (internal quotation marks and citation omitted).

While a consent decree is interpreted according to contract principles, "[b]ecause [it] does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny." *City of Miami.*, 664 F.2d at 441. The interpretive analysis "begin[s] by looking to the 'four corners' of the decree . . . [and] then look[s] to extrinsic evidence if the decree is ambiguous." *Dean*, 438 F.3d at 448. "When interpreting a contract, a court 'should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless.'" *In re Velazquez*, 660 F.3d 893, 898 (5th Cir. 2001) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)) (emphasis in original).

"A [consent] decree is ambiguous when it is reasonably susceptible to more than one meaning, in light of surrounding circumstances and established rules of construction." *Dean*, 438 F.3d at 460. "As part of determining whether ambiguity exists, the court must look at the contract as a whole in light of the circumstances existing at the time of execution." *Triad Elec. & Controls, Inc. v.*

No. 11-50450

*Power Sys. Eng'r, Inc.*, 117 F.3d 180, 191 (5th Cir. 1997). "If a question relating to a contract's construction or ambiguity arises, the court examines the contract's wording in context of the surrounding circumstances." *Interstate Contracting Corp. v. City of Dallas, Tex.*, 407 F.3d 708, 712 (5th Cir. 2005). Additionally, "parol evidence may be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract." *Am. Tobacco Co.*, 463 F.3d at 407 (internal quotation marks and citation omitted). However, Texas law makes clear that courts should "exclude[] evidence of the subjective *undisclosed* thoughts and beliefs of the parties." *G & W Marine, Inc. v. Morris*, 471 S.W. 2d 644, 649 (Tex. Ct. App. 1971) (emphasis added).

Finally, we observe that "[w]here the court's finding is based on its decision to credit the testimony of one witness over that of another, that finding, if not internally inconsistent, can virtually never be clear error." *Schlesinger v. Herzog*, 2 F.3d 135, 139 (5th Cir. 1993) (internal quotation marks and citation omitted). "The district court, as the finder of fact in a bench trial, is best positioned to evaluate the credibility of the witnesses." *French v. Allstate Indem. Co.*, 637 F.3d 571, 580 (5th Cir. 2011).

*1. The City's Intent.*

Defendants first challenge the district court's conclusion that the City intended for the terms "owners and operators" to mean natural persons. Specifically, Defendants argue that the City's evidence on this issue was principally provided by the testimony of Laura Gordon ("Gordon"), the City attorney who negotiated the Agreed Judgment and was "an interested party" that Defendants imply was not a credible witness. Defendants also assert that this definition of the terms "owners and operators" does not appear in the Agreed Judgment, drafts of it, or correspondence between the parties during the negotiations. Defendants contend that this means that the City could not have intended for "owners and operators" to refer to natural persons.

No. 11-50450

These arguments, however, are insufficient to create "a definite and firm conviction that a mistake has been committed" by the district court. *Boudreaux*, 280 F.3d at 466. First, where a "court's finding is based on its decision to credit the testimony of one witness over that of another, that finding, if not internally inconsistent, can virtually never be clear error." *Schlesinger*, 2 F.3d at 139. Thus, a simple attack on Gordon's credibility is insufficient to require a reversal of the district court's findings.[3] Second, while Defendants are correct to observe (and the City acknowledges), that the Agreed Judgment, drafts of it, and the correspondence between the parties do not directly reference the proposed definition of the terms "owners and operators," these various documents did refer to Ordinance 9326, which had been the subject of the previous litigation, and defined "owners" and "operators" in terms of natural persons. Thus, the district court had evidence, in addition to Gordon's testimony, supporting its finding. Furthermore, the district court explained that excluding natural persons from the definitions of "owners and operators" would have "contravene[d] the City's overarching intent to regulate adult businesses that animated its desire to negotiate the narrowest possible settlement in 1995."

In light of this record, we affirm the district court's finding that the City understood the terms "owners and operators" to include natural persons in their definitions.

*2. Defendants' Intent.*

Defendants also argue that the district court erred in finding that Defendants intended the terms "owners and operators" to encompass natural persons. While Defendants do not cite to a particular finding of fact or conclusion of law in the district court's order, they likely contest the district court's overall conclusion that, "[in] sum, this Court concludes that the parties intended for

---

[3] Gordon repeatedly emphasized across two depositions and her testimony at the evidentiary hearing that this was her own understanding of these two terms.

'owners and operators' as used in the Agreed Judgment to mean individuals and natural persons." In reaching this conclusion, the district court relied on several pieces of evidence and some inferences. First, the court observed that it saw "no reason why Defendants would believe the City would negotiate a settlement in direct opposition to its goals both of regulating adult businesses and in achieving a settlement offering the narrowest protection possible." Second, the district court looked to the litigation behavior of Defendants. Diedrich, the owner and operator of Foxy's, hired Gilbert Levy to prosecute the first law suit on behalf of El Paso Entertainment. However, Robert Levine, the corporate attorney for El Paso Entertainment and JEDJO played no role in this litigation or in the settlement talks between Levy and the City, and was not copied on any of the correspondence between Levy and Gordon; only Diedrich was copied on those communications. This would imply that Diedrich saw himself as the party affected by the litigation and not the corporations he held shares in.

Defendants challenge the district court's conclusion by pointing to several pieces of countervailing evidence. First, they raise Diedrich's testimony that he believed that the Agreed Judgment would remain in effect so long as the Defendant corporations remained in control of the nightclubs and that he would not have sold his shares had he understood otherwise. Second, they point to Levine's testimony that he understood the Agreed Judgment to require only that CR&R remain in place as the landlord for the business and that he would not have advised Diedrich and Reiber to consent to the sale otherwise. Third, they note the testimony of Steve Fueston, one of the shareholders of CR&R and the voting trustee of all CR&R's shares, that he understood the Agreed Judgment to mean that the properties on which the nightclubs were located would be permitted to engage in their nonconforming, adult business uses so long as CR&R continued to own or lease those properties. Defendants also challenge the credibility of Gordon's testimony regarding whether she told Levy of her and the

No. 11-50450

City's understanding of the agreement. Finally, Defendants point to the "basic principle that the parties' agreement governs a consent decree and they are therefore free to negotiate something that had nothing to do with the prior litigation," citing to *Local Number 93, International Association of Firefighters v. City of Cleveland*, 478 U.S. 501, 522 (1986).

We find Defendants' arguments unavailing. Their reiterated attack on Gordon's credibility remains unpersuasive for the reasons discussed in the previous sub-issue. *See Schlesinger*, 2 F.3d at 139. Turning to Defendants' other arguments, neither Levine nor Fueston were parties to the negotiations surrounding the Agreed Judgment. As noted above, "parol evidence may be admitted for the purpose of ascertaining *the true intentions of the parties* expressed in the contract." *Am. Tobacco Co.*, 463 F.3d at 407 (internal quotation marks and citation omitted) (emphasis added). As Defendants acknowledge, neither Levine nor Fueston were parties to the negotiations or the Agreed Judgment itself. The district court was free to place less weight on their testimony. Diedrich's testimony, while that of a party to the agreement, is also of limited value for Defendants' position. Defendants cannot sustain a successful appeal merely by arguing that Diedrich was a more believable witness than Gordon: "With the clearly erroneous standard, '[the reviewing court] cannot second guess the district court's decision to believe one witness' testimony over another's or to discount a witness' testimony.'" *Atl. Sounding Co., Inc. v. Petrey*, 402 F. App'x 939, 941 (5th Cir. 2010) (quoting *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000)). The district court could properly choose to credit Gordon's testimony over Diedrich's, especially given her more intimate involvement in the negotiations,.

Defendants also argue that the district court ignored the principle that the parties to a consent decree are free to negotiate something that had nothing to do with the prior litigation. *See Local No. 93*, 478 U.S. at 522. Defendants are

correct that "it is the parties' agreement that serves as the source of the court's authority to enter any [agreed] judgment at all," and that "it is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree." *Id.* This principle says nothing, however, about how an ambiguous consent decree should be interpreted. When a consent decree is ambiguous, the interpreting court may look to "the surrounding circumstances" of its formation, including extrinsic evidence, to determine its meaning. *Interstate Contracting Corp.*, 407 F.3d at 712. Naturally, these "surrounding circumstances" may well include the nature and subject matter of the litigation leading up to a consent decree.

Defendants never respond to the district court's conclusion that "the Court sees no reason why Defendants would believe that the City would negotiate a settlement in direct opposition to its goals both of regulating adult business and in achieving a settlement offering the narrowest protection possible." Defendants also fail to counter the district court's conclusion that "Levy's participat[ion] in settlement discussions instead of, and with no involvement from, corporate counsel for El Paso Entertainment and JEDJO further supports the fact that 'owners and operators' means individual owners and operators, not corporate [owners and operators]."

Defendants' arguments do not render the district court's interpretation of the Agreed Judgment implausible. *See Anderson*, 470 U.S. at 573–74. Consequently, we affirm the district court's finding that Defendants intended for the terms "owners and operators" to mean natural persons.

*3. The plain language of the Agreed Judgment.*

Defendants also appear to challenge the district court's reading of the plain language of the Agreed Judgment. In particular Defendants point to a contested paragraph of the Agreed Judgment:

14

No. 11-50450

The parties have also agreed to the entry of a permanent injunction against the City of El Paso preventing the city from the enforcement of any adult business ordinances against either Foxy's Nightclub . . . and the Lamplighter Lounge . . . . The clubs known as Foxy's Nightclub and Lamplighter Lounge shall be recognized as legal, non-conforming uses and shall be permanently grandfathered as such for, for such a period of time as the businesses remain in operation at their current locations by their current owners and operators. These businesses shall retain their status as a non-conforming use, as set forth herein, regardless of any intervening court decisions or future changes or amendments to the El Paso City Code. *The parties recognize that property located [where Foxy's Nightclub is] is currently leased by CR&R, Inc., and the property located [where Lamplighter Lounge is] is owned at CR&R, Inc., . . . and that this injunction applies to that business as the real party in interest in this lawsuit and the third-party beneficiary of this settlement agreement.* Thus, the phrase "remain in operation" as set forth above means that CR&R, Inc., will continuously maintain its ownership or leasehold interest in the subject properties and that the businesses shall remain open for business as adult businesses subject to the provisions of [the City Code] allowing for temporary closure for a short period of time.

(emphasis added).

The district court explained that "Defendants' interpretation of the Agreed Judgment, that they would continue to be protected [from the City's enforcement of SOB ordinances] so long as CR&R maintained its ownership and leasehold interests in the subject properties on which Foxy's and Lamplighter were located, [wa]s untenable." In arriving at this conclusion, the district court stated that granting "CR&R . . . grandfathered protection [would] change[] the plain meaning of the Agreed Judgment, since . . . the Agreed Judgment explicitly confers non-conforming use status only to Foxy's and Lamplighter, not CR&R." The district court further interpreted this section to mean that "the Agreed Judgment controls so long as CR&R maintains its ownership or leasehold interest, and Foxy's and Lamplighter remain open for business as adult businesses at the current locations by their current owners and operators. The

15

language naming CR&R as a third-party beneficiary means that CR&R enjoys protection from liability for any violations of the City's adult business zoning ordinances, protection derivative from Foxy's and Lamplighter's status as legal, non-conforming uses."

Defendants contest this reading on several grounds. First, Defendants argue that the district court's conclusion that the Agreed Judgment "was intended to benefit only the corporations . . . who owned and operated the businesses and the shareholders of those corporations" renders the phrase "real party in interest" meaningless. Along these lines, Defendants assert that the district court's reading that CR&R is a third-party beneficiary of the Judgment is "nonsensical" because if Foxy's and the Lamplighter were granted protection from the City Code as lawful, non-conforming uses, then CR&R would not have needed derivative protection as a third-party beneficiary. Defendants also challenge the district court's reading of the phrase "remain in operation" as meaning that CR&R had to maintain its ownership and leasehold interests over the properties and that the nightclubs had to remain open as SOBs at their current locations with their current owners and operators. Defendants argue that they themselves proposed this phrase and contest an interpretation that "fails to explain why Defendants would propose contract language that amounts to an additional limitation of their rights under the agreement." In sum, Defendants believe that "the only reasonable interpretation is that the Agreed Judgment remains in effect so long as the businesses continue to operate at their present locations and CR&R maintains its interest in the subject properties."

These arguments are unpersuasive. First, it is unclear that by reading the term "real party in interest" to mean that CR&R derived its own protected status from the nightclubs' legal, non-conforming use, the district court rendered the phrase "real party in interest" meaningless. Because the Agreed Judgment did not define these terms, one could possibly read the Judgment as protecting the

16

nightclubs, but not CR&R. In other words, the City would not have been able to enforce its Codes against the nightclubs, but would have been able to pursue CR&R as either the owner or lessee of the properties on which the nightclubs are located. However, the district court opted for a more sensible interpretation. Thus, under its reading, the second and third sentences in the contested paragraph establish the protections for the nightclubs:

> The clubs known as Foxy's Nightclub and Lamplighter Lounge shall be recognized as legal, non-conforming uses and shall be permanently grandfathered as such, for such a period of time as the businesses remain in operation at their current locations by their current owners and operators. These businesses shall retain their status as a non-conforming use, as set forth herein, regardless of any intervening court decisions or future changes or amendments to the El Paso City Code.

The fourth sentence clarifies that these protections also extend to CR&R:

> The parties recognize that property located [where Foxy's Nightclub is located] is currently leased by CR&R, Inc., and the property located [where Lamplighter Lounge is located] is owned by CR&R, Inc., . . . and that this injunction applies to that business as the real party in interest in this lawsuit and the third-party beneficiary of this settlement agreement.

Reading sentences in a paragraph in conjunction, so that later sentences clarify the scope and meaning of earlier ones, is routinely done by courts. *See, e.g.*, *Kern v. Sitel Corp.*, 517 F.3d 306, 309–10 (5th Cir. 2008). The district court's reading does not render any term superfluous and simply gives a sense of how far the "legal, non-conforming use" protections were to extend.

Defendants' argument regarding the other contested sentence also fails. The district court read the sentence at issue to imply a further restriction on Defendants:

> [T]he phrase "remain in operation" as set forth above means that CR&R, Inc., will continuously maintain its ownership or leasehold interest in the subject properties and that the businesses shall remain open for business as adult businesses subject to the

17

provisions of [the City Code] allowing for temporary closure for a short period of time.

Defendants contend that because they added this phrase to the Agreed Judgment, it should not be read as limitation because that would be contrary to their interests. The problem with Defendants' argument is that it is hard to read this sentence differently than the district court did. The sentence expressly states that CR&R "will continuously" do something. The previous panel did not find this phrase to be ambiguous, and "[i]t is well established that the extrinsic evidence rule ordinarily requires the exclusion of parol[ ] evidence that would add to, vary, or contradict the unambiguous terms of a written contract." *Verex Assur., Inc. v. First Interstate Bank of Cal.*, 35 F.3d 559, 1994 WL 499619, at \*4 (5th Cir. Aug. 22, 1994) (unpublished) (citation and internal quotation marks omitted). Thus, Defendants' purported reasons for including the phrase are irrelevant given the unambiguous nature of the sentence.

As the district court's reading of the terms does not render any terms of the Agreed Judgment superfluous or meaningless, we reject Defendants' arguments and affirm its decision.

*4. Conclusion*

Taken together, Defendants' various challenges to the district court's findings of fact and conclusion of law are unpersuasive. We, therefore, affirm the district court's judgment on this point.

**C. Whether the district court erred in excluding the testimony of Defendants' witness, Dean Reiber, and Defendants' exhibits.**

Defendants also appeal the district court's exclusion of the testimony of Dean Reiber and several exhibits related to Reiber's testimony. "We review a district court's evidentiary rulings for abuse of discretion." *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 355 (5th Cir. 2010). "The trial court's discretion to admit or exclude evidence is generally broad, but competent evidence cannot be

excluded without a sound and acceptable reason." *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 370 (5th Cir. 2000) (internal quotation marks and citation omitted); *see also* FED. R. EVID. 401. "We will reverse a judgment for an evidentiary ruling only if it affected the substantial rights of the parties." *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 992 (5th Cir. 2008).

Prior to the hearing, the City made an *in limine* motion to exclude the testimony of Reiber, arguing that his testimony was irrelevant to the case at hand because he would be testifying regarding the meaning of the Agreed Judgment, but only had knowledge of the Judgment's meaning through the Judgment itself and a conversation with Robert Levine in 1995, after the entry of the Agreed Judgment. Defendants responded with an offer of proof of Reiber's proposed testimony, asserting that Reiber's testimony would have been used to show that "up until the time that the present lawsuit was filed[,] the City made no effort to ascertain whether there had been a change in ownership or to invalidate the Agreed Judgment on grounds that the ownership had changed," even though Reiber had filed SOB license applications on behalf of several of the Defendant corporations. The district court initially indicated that it would allow Reiber to testify, but later excluded his testimony. The district court also excluded several exhibits related to Reiber's proposed testimony.

The key question is whether Reiber's proposed testimony, along with the proposed exhibits, would have provided relevant information regarding the meaning of the term "owners and operators" in Agreed Judgment. This in turn depends on what kinds of evidence may be used in the interpretation of an ambiguous contract. "When interpreting contracts, courts applying Texas law must strive to ascertain the parties' intent as expressed in the written instrument." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 404 (5th Cir. 2009). This court has explained that "[e]xtrinsic evidence of the facts and circumstances *surrounding the making of the agreement* may be used to interpret the contract

No. 11-50450

in light of the parties' true intentions." *Koch Indus., Inc. v. Sun Co., Inc.*, 918 F.2d 1203, 1208 (5th Cir. 1990) (emphasis added). If a contract is ambiguous, as here, then "[p]arol evidence—such as the parties' course of performance—may be used to ascertain the intent of the parties . . . ." *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010).

In light of these governing standards, it was not an abuse of discretion for the district court to exclude Reiber's testimony. Reiber, a non-party to the agreement, could not testify as to his understanding of the Agreed Judgment because he was not a party to the Judgment, lacked any personal knowledge regarding the circumstances of its formation, and, as Defendants acknowledge, only became aware of the contents of the Judgment through the document itself and his discussions with Levine following the settlement of the first lawsuit. *See* FED. R. EVID. 602 ("A witness may testify only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. . . .").

Defendants also argue that they sought to introduce Reiber's testimony, and some attendant exhibits, "insofar as [they] reflect[] on the City's understanding of the terms of the agreement." But, again, this does not relate back to the formation of the agreement and the circumstances surrounding it, the lynchpin of contractual interpretation. To try and bolster their argument, Defendants cite to a range of cases from other jurisdictions for the proposition that post-formation evidence may be admitted to unravel the meaning of ambiguous contractual language. These cases, however, all deal with the post-formation conduct of parties, specifically their course of performance. Moreover, in all these cases the course of performance by each of the parties was in the course of an ongoing business relationship or carrying out the terms of the agreement. In contrast, Reiber's testimony and the exhibits would, at most, imply that the City might have had knowledge in 2004 that the nightclubs'

ownership changed, but did not react until late 2007 when it filed the complaint in the present suit.

Moreover, even if the district court's decision to exclude this evidence was an abuse of discretion, the decision was likely harmless. *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). Defendants offer no indication of harm other than asserting that if Reiber's testimony had been admitted, the district court would have further credited the testimony of Diedrich and Fueston. Given that the district court had heard testimony similar to that which Reiber would have given, and had the previous panel opinion before it, which discussed some of these issues in the laches context, *El Paso Entm't*, 382 F. App'x at 366–67, there is no reason to believe that the exclusion of Reiber's testimony or exhibits caused any harm to Defendants' substantial rights.

Reiber's testimony and the proffered exhibits would not have shed light on the circumstances and facts surrounding the entry of the Agreed Judgment or the parties' intent during this time, and their exclusion caused no harm. We find that the district court did not abuse its discretion in excluding this evidence.

**D. Whether the district court erred in excluding the testimony of Defendants' witness, Gilbert Levy.**

Defendants also appeal the district court's exclusion of the testimony of Gilbert Levy, who served as counsel during the negotiation of the Agreed Judgment, and has acted as both trial and appellate counsel in the current lawsuit. Defendants allege that at a November 22, 2010, deposition, Laura Gordon, who negotiated the Agreed Judgment with Levy, "claimed for the first time that while she had no specific recollection of conversations that took place in the course of negotiations leading up to the Agreed Judgment, she had informed Levy that the terms 'owner' and 'operator' were intended to mean natural persons." On December 3, 1010, Levy wrote to the City's counsel, claiming that Gordon's 2010 deposition testimony contradicted previous

testimony that Gordon gave at a 2008 deposition, on grounds that Gordon "claimed lack of memory through much of [the 2008] deposition."[4] In his December 3 letter, Levy also notified the City that if it intended to offer testimony by Gordon on this issue, he would ask the court for leave to testify in rebuttal. At this point, the trial was scheduled to commence on December 16, 2010,[5] and final witness lists had been scheduled to be submitted by November 22, 2010.[6] On December 10, 2010, the City filed a motion *in limine* to prevent Levy from testifying, arguing that Levy was a surprise witness and his role as counsel to Defendants throughout the negotiation of the Agreed Judgment should preclude him from acting as a witness. The district court heard arguments by both sides regarding the City's motion to exclude Levy's testimony. The district court granted the motion *in limine*, explaining that it was concerned by Levy's role in negotiating the Agreed Judgment and in representing Defendants, but also noting that it would reconsider its decision after hearing Gordon's testimony if it found that the exclusion of the testimony inflicted "tremendous hardship" on Defendants. Following Gordon's testimony, Defendants renewed their request that Levy be permitted to testify, but the district court did not change its ruling excluding his testimony.

The standard of review is identical to that for the previous issue: abuse of discretion subject to a harmless error analysis. *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 265 (5th Cir. 2007). "In reviewing the district court's exercise of discretion to exclude [a witness] not properly designated, this court considers

---

[4] Prior to this, the City asserts that Levy had stated in late November that he would not testify at the trial.

[5] The trial actually took place the next day, on December 17, 2010.

[6] In its pretrial order, the court explained: "No witness, other than those listed in the compliance with this order, shall be permitted to testify other than for good cause shown and arising at trial in response to the case in chief, or to the case in defense, and not reasonably anticipated at the time of complying with this order."

four factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Brumfield v. Hollins*, 551 F.3d 322, 330 (5th Cir. 2008) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).

Analyzing the first factor—the explanation for the failure to identify the witness—requires examining whether Gordon's testimony changed from her 2008 deposition to the 2010 deposition and the trial. Surveying the record, we find that while Gordon's testimony at the evidentiary hearing is consistent with her testimony at the 2010 deposition, there is a potential discrepancy with her statements at the 2008 deposition testimony. At the 2008 deposition, Gordon made clear that *she* understood the Agreed Judgment to be in effect as long as the nightclubs remained "owned by the same people," implying natural persons. Gordon did not, however, affirmatively state that she had communicated this view to Levy during negotiations over the Agreed Judgment, and in its brief the City only references statements in the 2008 deposition that indicate what Gordon's own understanding of these terms were, not that she communicated this view to Levy. This may suggest that there was a plausible explanation for why Defendants did not identify Levy as a witness. *Cf. Hamburger v. State Farm. Mut. Auto Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004) (finding that counsel's belief that expert report was not necessary to proving part of case sufficient explanation for failure to submit expert report). Of course, Levy did not directly solicit this information from Gordon in the 2008 deposition, so that should be weighed in the calculus of whether the district court properly exercised its discretion in not permitting Levy to testify.

Moreover, it should be remembered that Levy served as counsel for Defendants when they negotiated the Agreed Judgment. Defendants may reasonably not have anticipated a need for Levy to testify and could have

plausibly believed that the text of the Judgment would be determinative. However, once the Agreed Judgment was found to be ambiguous, the intentions of the parties became relevant, meaning that Levy's understanding of what the terms "owners and operators" meant at the time of agreement was important and likely to be at issue. In sum, this suggests that the first factor does not clearly favor either party.

The second factor is the importance of the excluded testimony. "'The importance of . . . proposed testimony cannot singularly override the enforcement of local rules and scheduling orders.'" *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996) (quoting *Geiserman*, 893 F.2d at 792). Here, the testimony likely had some relevance to the district court's decision, but the court did not rest its decision on an explicit finding that Gordon had communicated her and the City's understanding of the meaning of "owners and operators" to Defendants. Instead, the district court relied on other evidence, including the plain language of the Agreed Judgment, the City's incentives in negotiating the Agreed Judgment, and finally the fact that Levy carried out the negotiations with no involvement from counsel for the other Defendant corporations suggested that the terms "owners and operators" included natural persons, not only corporate entities. Moreover, even if Levy's testimony was "important," "the importance of [Levy's] testimony underscores how critical it was for [Defendants] to have timely designated [Levy]." *Hamburger*, 361 F.3d at 883. Accordingly, the second factor does not weigh in favor of Defendants.

The third factor concerns the potential prejudice in allowing Levy to testify. The City did not have time to depose Levy following his December 3 letter indicating his intent to testify, given that there were only two weeks until the evidentiary hearing. Indeed, there was no indication, prior to the December 3 letter, that Levy would be called as a witness. Panels of the Fifth Circuit have repeatedly emphasized that delays which limit a party's capability to prepare for

No. 11-50450

adverse testimony are prejudicial. *See, e.g.*, *Hamburger*, 361 F.3d at 883; *Geiserman*, 893 F.2d at 791. Moreover, Defendants have not indicated how including Levy's testimony would not have prejudiced the City, especially given the late point in the proceedings when he intended to testify. *See Garza v. Allstate Tex. Lloyd's Co.*, 284 F. App'x 110, 113 (5th Cir. 2008). Taken together, all this information suggests that the City would likely have been prejudiced by including Levy's testimony at such a late point prior to the evidentiary hearing.

The final factor concerns the availability of a continuance to cure any such prejudice. In his December 3, 2010, letter, Levy did not request a continuance of the proceedings. Pretrial disclosures were due on December 7, 2010, two business days later, and the evidentiary hearing was scheduled for December 16, 2010. "Although a continuance might have cured any prejudice, such a remedy would have delayed resolution of the case and added to [the City]'s expenses." *Garza*, 284 F. App'x at 113.

Taken together, these various factors indicate that the district court did not abuse its discretion in excluding Levy's testimony. For that reason, we affirm the district court's decision to exclude Levy's testimony.

## III. CONCLUSION

For all of the foregoing reasons, we AFFIRM the district court's judgment in favor of the City.