Glenn HENRY, et al., Plaintiffs,

v.

MERRILL FARMS, et al., Defendants.

WESTERN CONFERENCE OF TEAM-
STERS PENSION TRUST FUND,
Cross-Claimant,

v.

Glenn HENRY, et al., Cross-Defendants.

No. C–77–2348 SAW.

United States District Court,
N. D. California.

July 14, 1982.

Herendeen & Bryan, Robert A. D'Isidoro, Salinas, Cal., Stefan M. Rosenzweig, Mary K. Gillespie, Richard M. Pearl, Kristin White, California Rural Legal Assistance, San Francisco, Cal., for plaintiffs.

Pillsbury, Madison & Sutro, Dennis K. Bromley, Robert A. Gordon, San Francisco, Cal., for defendant Western Conference of Teamsters Pension Trust Fund.

Dickstein, Shapiro & Morin, Washington, D.C., Jerry K. Cimmet, San Francisco, Cal., for defendants Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

ORDER GRANTING PLAINTIFFS' MOTION TO CLARIFY CLASS DEFINITION AND SETTLEMENT, FOR AN ACCOUNTING AND TO EXTEND THE COURT'S JURISDICTION

WEIGEL, District Judge.

This action involves the rights of agricultural workers to receive pension contributions their employers made to the defendant Western Conference of Teamsters Pension Trust Fund (Trust Fund). The complaint was filed on June 10, 1977, and as amended, alleged that plaintiff class members were in the Teamsters Union and participants in the Western Conference of Teamsters Pension Plan (Plan) commencing in 1973 or later. It was further alleged that in or about July 1978, the defendant Teamsters Union, pursuant to a jurisdictional agreement with the United Farm Workers Union (UFW), terminated representation of the plaintiff class and that by reason of such termination of representation, plaintiffs' interests in the Plan were extinguished or substantially reduced. They brought suit for relief concerning their pension contributions and status under the Labor Management Relations Act and the Employee Retirement Income Security Act.

On May 7, 1980, a Final Judgment was entered by Hon. Albert C. Wollenberg of this Court, which incorporated a Stipulation of Settlement reached between the parties. Pursuant to the stipulation, plaintiff class members were to recover from the Trust Fund a portion of the amounts which had been contributed on their behalf by their employers. Stipulation of Settlement, pp. 6–8.

A dispute has arisen between the parties as to the definition of eligible class members. The matter is before the Court on plaintiffs' motion to clarify the class definition and settlement, for an accounting, and to extend the Court's jurisdiction until July 8, 1983. Upon consideration of the papers and pleadings and the argument of counsel, the Court grants plaintiffs' motion.

■ As defined in the stipulation,
'Class member' means *any participant* in the Western Conference of Teamsters Pension Plan *who was employed* as an agricultural worker by the employers listed in Exhibit A to this stipulation *at the time* (not earlier than March 10, 1977) such person's employer ceased to be a party to a collective bargaining agreement with a local union of the Western Conference of Teamsters (emphasis added).

It appears to be the Trust Fund's position that "class member" means only those persons whose names appear on the last payroll preceding the expiration date of each particular collective bargaining agreement. While stating that the "at the time" language *could* be construed to mean "on the day" the Teamster contracts expired, the Trust Fund apparently recognizes the absurdity of that narrow construction and urges that the provision refers to the last payroll *period* (ranging from two to four weeks). Defendants' Memorandum of Points and Authorities, p. 8.

Such a construction defeats the purpose of the Settlement to provide refunds to *all* agricultural workers—seasonal and nonseasonal—whose pension contributions were extinguished as a result of the jurisdictional agreement between the Teamsters Union and the UFW.[1] The date of expiration of

1. This purpose is established by the records and documents before the Court. Initially, suit was filed on behalf of employees of one agricultural employer, Merrill Farms. Defendant Trust Fund then cross-claimed against a class of "*all persons* who are or have been agricultural workers and who have accrued at least one hour of 'covered service' in the Trust Fund's pension plan as that term is defined in the Plan." Cross-claim, paragraph 4 (emphasis

added). On July 7, 1978, the Court certified the cross-action as a class action to include
*All persons* who are or have been agricultural workers and who cease to be credited with Covered Hours (as that term is defined in the Western Conference of Teamsters Pension Plan) because their Employers have discontinued contributions to the Western Conference of Teamsters Pension Trust Fund on account of the jurisdictional agreement between the Western Conference of Teamsters

the Teamsters contracts is purely fortuitous and in no way identifies those agricultural workers whose departure from the Plan was a result of the jurisdictional agreement. On the contrary, such an arbitrary construction ignores the seasonal nature of farmwork, limiting refunds to agricultural workers whose names happen to appear on the payroll coinciding with the particular contract's expiration date. Thus, if the contract expires during a "peak" season, most class members will be protected; if the contract expires during a "slack" season, many class members will be denied refunds.

The record abounds with illustrations of the inequities resulting from such a narrow construction of "class member." To cite just a few, (1) the Trust Fund granted benefits to the named plaintiffs, who were working in Salinas in July 1978 when the Teamsters contract with Merrill Farms expired, but denied them to Bruce Church, Inc. employees, also working in Salinas in July 1978, because the Teamsters contract with Bruce Church expired in December 1978; (2) the Trust Fund granted benefits to Sam Andrews employees who harvest melons, but denied them to a fellow Sam Andrews employee who harvests lettuce, because the Teamsters contract with Sam Andrews expired in July 1978, when lettuce harvesters are on a seasonal layoff; (3) the Trust Fund denied benefits to Ralph Samsel Co. lettuce workers because the Teamsters contract expired in July when Ralph Samsel Co. is not operating. (The Ralph Samsel Co. operates in the Salinas area from April—June, and August—October; in the Imperial Valley from December—March; and occasionally in the San Joaquin Valley in early Spring and late Fall. It never operates during the month of July.)[2] These results were neither intended by the parties nor can they be reasonably required.

The Trust Fund's position does not comport with established labor law rulings that a seasonal worker remains an "employee" unless he has been terminated, whether or not he is actively working. See N. L. R. B. v. C. H. Sprague & Son Co., 428 F.2d 938 (1st Cir. 1970) (off-season status of winter drivers was functional equivalent of temporary layoff and thus did not prevent them from inclusion in bargaining unit with year-round drivers); N. L. R. B. v. Jesse Jones Sausage Co., 309 F.2d 664 (4th Cir. 1962)

and the United Farm Workers. (Order, July 7, 1978 (emphasis added).)

A plaintiffs' class was thereafter certified, consisting of identical persons. (Order of September 29, 1978.)

On January 4, 1979, several farmworkers filed a Motion Requesting Leave to Intervene and a Proposed Complaint in Intervention, claiming that they were excluded from the plaintiff and cross-defendant class as certified. The intervenors were farmworkers who had voted to certify the UFW as their union *after* the jurisdictional agreement, and who feared that they would be excluded from the settlement as the class was then defined. The Court denied the Motion to Intervene on April 30, 1979, but ordered the parties to amend the class definition to include the intervenors. In order to make it clear that the class included workers who had voted out the Teamsters *after*, but not before, the date of the jurisdictional agreement, the parties changed the class definition to the current one, which defines worker eligibility by reference to specific employers whose Teamster contracts had terminated *after* the jurisdictional agreement was reached. As the Trust Fund acknowledged in its Proposed Redefinition of the Class, filed April 17, 1979, "... *the definition does not involve a significant change in the size or scope of the class,*

but merely adds a list of employers whose contracts terminated after March 10, 1977." (Page 2, emphasis added.)

It appears clear, then, that the "employed ... at the time" language was not inserted to exclude workers who would have been eligible under the preceding definitions, but to cover all employees whose departure from the Plan was on account of the jurisdictional agreement.

In contrast, nothing in the record or documents before the Court indicates that there was any intention to exclude seasonal workers, regularly employed each season by a listed employer, because he or she did not happen to be working at the time of the expiration of the contract. Counsel for defendants, in response to inquiry by the Court in the July 1, 1982 hearing, could point to nothing in the record or prior proceedings showing otherwise. See Reporter's Transcript, July 1, 1982, p. 6.

2. Because of this obvious inequity, the Trust Fund did make an exception for the Ralph Samsel Co. by changing from a July to a June payroll period. However, this adjustment will not aid Ralph Samsel Co. employees in the Imperial Valley or the San Joaquin Valley where no one is employed in June.

(laid-off employees are entitled to vote in representation election where they have reasonable expectation of re-employment within reasonable future). The class definition must be clarified to prevent glaring inequities among similarly situated class members.

█ An accounting from defendants, detailing the disposition of claims made under the Stipulation of Settlement, is necessary to assure that the stipulation is, in fact, implemented fairly and in accordance with its terms. The Final Judgment provides that the Court reserves jurisdiction over the action "for the purpose of supervising and directing the administration of the settlement." Final Judgment, paragraph 4. Without being informed of the identities of workers who were eligible to apply for refunds, how many actually applied, how many were granted and how many were denied refunds and for what reasons, the Court cannot effectively supervise and direct the administration of the settlement.

Moreover, the Court has a duty to protect the rights of absent class members under Rule 23, Fed.R.Civ.P. *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 832 (3d Cir. 1973); *In Re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977); *Zients v. La Morte*, 459 F.2d 628, 630 (2d Cir. 1972). As stated in *Zients, supra* at 630, ". . . a court supervising the distribution of a trust fund has the inherent power and duty to protect unnamed, but interested persons." Thus, an accounting is also warranted pursuant to this Court's inherent power to act as the guardian of the rights of the absentee class members and to protect and enforce the Final Judgment. *See Marshall v. Local Union No. 639, International Brotherhood of Teamsters, etc.*, 593 F.2d 1297, 1302 (D.C. Cir.1979), and cases cited therein.

Finally, in order to assure that the Stipulation of Settlement is implemented fairly and to preserve the rights of class members to appeal to this Court from a denial of refunds upon exhaustion of the Trust Fund's internal review procedures, this Court should extend its jurisdiction for one year. Accordingly,

IT IS HEREBY ORDERED that the definition of "class member", as used in the Stipulation of Settlement, includes all covered employees who worked during the twelve-month period preceding the contract termination, except those whose relationship with their employers or the Teamsters Union was permanently severed.

IT IS FURTHER HEREBY ORDERED that, within 60 days from the entry of this Order, defendants shall serve upon plaintiffs' counsel and file with this Court a list identifying the agricultural workers who were eligible to apply for refunds under the Stipulation of Settlement, those who actually applied, those who were granted or denied refunds, and the reasons therefor.

IT IS FURTHER HEREBY ORDERED that this Court's jurisdiction of this action should continue for an additional year, until July 8, 1983, subject to appropriate further order of this Court.