Filed 4/4/16  Bath v. Blue Shield of California CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JESSICA BATH et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>BLUE SHIELD OF CALIFORNIA,<br><br>    Defendant and Appellant. | 2d Civil No. B254969<br>(Super. Ct. No. CV070360)<br>(San Luis Obispo County)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>[NO CHANGE IN<br>DISPOSITION/JUDGMENT] |

THE COURT:

It is ordered that the opinion filed in this case on March 3, 2016, be modified as follows:

On page 11, first line, add the word "In" before "*Henry v. Merrill Farms . . . .*"

There is no change in the disposition/judgment.

Appellant's petition for rehearing is denied.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JESSICA BATH et al.,<br><br>  Plaintiffs and Respondents,<br><br>v.<br><br>BLUE SHIELD OF CALIFORNIA,<br><br>  Defendant and Appellant. | 2d Civil No. B254969<br>(Super. Ct. No. CV070360)<br>(San Luis Obispo County) |

Jessica Bath brought this action on behalf of a plaintiff class (collectively plaintiffs) alleging that Blue Shield of California (Blue Shield) had unlawfully rescinded healthcare insurance based upon purported misrepresentations made on insurance applications.  Plaintiffs obtained a declaratory judgment decreeing that Blue Shield had the right to rescind coverage only if a subscriber made an intentional material misrepresentation on the application.

After we affirmed the judgment,[1] plaintiffs moved to enforce it. The trial court granted the request, in part, by ordering Blue Shield to compile a list of the class members who have been affected by Blue Shield's application of

_____

[1] *Bath v. Blue Shield of California* (Aug. 31, 2011, B219290) [nonpub. opn.] (*Bath I*).)

the incorrect rescission standard. Blue Shield appeals, contending the trial court exceeded its authority by ordering coercive relief from a purely declaratory judgment.

The order on appeal is preliminary to further proceedings and therefore nonappealable. Nevertheless, we elect to treat the purported appeal as a petition for a writ of mandate. We conclude that the trial court has equitable authority to award supplemental coercive relief to give meaning to its prior declaration of rights, that it acted appropriately by balancing the competing equities in deciding whether to award such relief, and that it did not abuse its discretion by requiring Blue Shield to compile a list of the affected class members. We deny the petition.

## FACTS AND PROCEDURAL BACKGROUND

Bath applied for and was accepted for coverage under a healthcare services plan with Blue Shield in 2002. She subsequently gave birth to a son, who was covered under the plan. The child was born with a heart defect and required surgery and other medical care. Blue Shield rescinded the insurance contract and declined to pay the child's medical bills. It claimed that Bath had misrepresented material facts about her health history and medical conditions on the application.

Bath filed a complaint alleging individual claims along with causes of action for declaratory relief and violation of unfair competition law (UCL) on behalf of a class of approximately 600 insurance subscribers whose coverage was rescinded between April 2003 and June 2008. Plaintiffs alleged that whenever a substantial benefits claim was received during that period, Blue Shield would examine the subscriber's insurance application and medical records for discrepancies and then, if any were found, would rescind the insurance coverage regardless of any intent by the subscriber to deceive Blue Shield.

The trial court certified the declaratory relief and UCL claims as class actions. The declaratory relief cause of action requested "a declaration of

2

the parties' rights and liabilities under the [insurance] agreements." The UCL claim sought injunctive relief, "requesting that the Court enjoin Blue Shield from committing the acts alleged herein in the future and require Blue Shield to re-examine and re-process its prior rescissions under the correct standards."

Following a series of objections and negotiations, plaintiffs withdrew their request for certification of the UCL claim. As a result, the trial court entered an amended order certifying the case as a class action with respect to the cause of action for declaratory relief only. Plaintiffs requested that the class be given notice so that members could decide whether to bring or preserve their own claims for monetary or injunctive relief, given that the statute of limitations on class members' individual claims would not be tolled during proceedings on the declaratory relief claim.

The trial court granted the request, stating that "while there is no authority for this court to protect class members from the effects of applicable statutes of limitations, Plaintiff[s'] counsel at least ostensibly has such a duty." The notice sent to the class members stated "[t]here is only one claim . . . that is being pursued on behalf of the Class. That claim is for Declaratory Relief. Declaratory Relief means that the plaintiffs are asking the Court to determine the rights and liabilities of the parties . . . . The single class claim is seeking a declaration by the Court as to two matters . . . . [¶] If plaintiffs prevail on this claim, the Court will enter a judgment declaring that Blue Shield can only rescind coverage based on willful and intentional misrepresentations or omissions in the application for coverage and/or that Blue Shield cannot rescind one person's coverage based on a misrepresentation of omissions made by another person in the application for coverage. . . ."

The notice further stated: "No legal theories, claims, or remedies will be pursued on behalf of the Class other than those described in this Notice. No monetary damages or injunctive relief are sought on behalf of the class members. The statute of limitations, which can bar legal claims unless they are

3

filed within a certain period of time, may affect your ability to pursue other claims or seek other remedies. [¶] If you wish to pursue claims other than those described in this Notice, you may wish to exclude yourself from the class, but you do not necessarily have to do so. If you remain a Class member, and plaintiffs prevail on behalf of the Class, this lawsuit will not prevent or limit your ability to pursue additional claims or seek additional remedies separately."

The parties proceeded to litigate the declaratory relief claim, which sought a declaration as to two specific issues: (1) Whether Blue Shield was prohibited from rescinding health care coverage based on a subscriber's material misrepresentations, absent a showing that the misrepresentations were made willfully; and (2) whether a dependent's coverage may be rescinded for misrepresentations made by the subscriber.

Blue Shield moved for summary adjudication of both issues. The trial court summarily adjudicated the second issue in Blue Shield's favor, but denied the motion as to the first issue, finding "that the language [of the health insurance contract] is unambiguous, and that it provides that Blue Shield can rescind a subscriber's participation in the plan only where the applicant's/subscriber's failure to provide all material facts in an application was accompanied by some level of intent or knowledgeable falsehood."

To facilitate an immediate appeal, the parties stipulated to dismissal of Bath's individual claims and to judgment on the class claims based on the trial court's summary adjudication ruling. We upheld the trial court's decision in *Bath I*, agreeing that the unambiguous language of the health insurance contract gives Blue Shield the right to rescind coverage to an insured covered by the plan only if he or she makes an intentional material misrepresentation. The law in California is now consistent with this ruling. (Health & Saf. Code, § 1389.21, subd. (a); Ins. Code, § 10384.17, subd. (a).)

After issuance of the remittitur, plaintiffs demanded that Blue Shield review its rescission of class members' coverage for compliance with the

4

standard affirmed by this court. Blue Shield refused, claiming that the declaratory judgment simply declared the meaning of the insurance contract. It asserted it was not required to individually re-examine its prior rescissions and that any particular class member who wished to utilize the declaration to enforce his or her individual rights through an individual lawsuit was free to do so.

Plaintiffs moved to enforce the declaratory judgment, arguing that the trial court had equitable powers to enter a postjudgment injunction to "enforce" the declaratory judgment and to compel Blue Shield to re-review the files of all class members under the intent criterion upheld by this court. The trial court granted the request for the re-review on August 29, 2012. The court understood that the judgment was for declaratory relief only, but concluded it has the equitable authority, after weighing all of the competing equities, to add postjudgment coercive relief "in order to give meaning to its prior declaration of rights." It determined that the equities weigh "heavily" in favor of enforcement of the judgment here.

The trial court emphasized the courts' duty to act as "guardians" of absent class members, supervising "all phases of class action litigation" for their benefit. The court gave great consideration to that duty here, "in light of its observation that class members' loss of health insurance can result in financial and personal catastrophe to the insured . . . ." It intended to ensure that "[a]fter a five-year litigation Odyssey to the California Supreme Court and back," the judgment plaintiffs had won would "not become a meaningless piece of paper leaving catastrophically-injured Plaintiffs without a remedy and needlessly exposing the judicial system to ridicule."

In response to Blue Shield's contention that it now applies the "intentionality" standard to current rescissions, the trial court questioned Blue Shield's refusal to apply that standard to its rescissions of class members' coverage. The court was especially concerned that the only other recourse class members would have to enforce the law declared in the judgment -- individual

5

actions -- might be time-barred. To address this concern, it stated its "intent[] to find out how many people within the vulnerable Plaintiffs' group have been affected by application of Blue Shield's incorrect rescission standard. Then, if necessary, the Court will fashion a reasonable and practical coercive remedy for their benefit."

The August 2012 order directed Blue Shield to prepare a plan for the re-review process. Blue Shield moved for reconsideration. The trial court denied that motion, but appointed a referee, Justice Nat A. Agliano (ret.), to investigate and recommend procedures for conducting the re-review. After Justice Agliano submitted his recommendations, the parties mutually asked the trial court to remand the matter to Justice Agliano for a more comprehensive recommendation. Justice Agliano held several more hearings before issuing a revised recommendation as to all contested issues regarding the re-review process. Each party opposed certain recommendations, with Blue Shield continuing to object to any postjudgment coercive relief.

Following further briefing and argument, the trial court issued an order on March 3, 2014, detailing the procedures to be used for the re-review process. The order provides that after completion of the re-review process, Blue Shield shall provide Justice Agliano and class counsel with a report containing the results of the re-review, including "the basis for Blue Shield's original rescission decision, the decision on re-review with reasons for the decision, and a certification under oath by Blue Shield that the decision complies with the standard of review."

Although the parties requested that the trial court "set forth the additional remedies and procedures that will be available to an aggrieved class member who did *not* intentionally misrepresent or omit any material fact in the member's application, or whose rescission was otherwise improper, the Court decline[d] the invitation." Consistent with its prior order, the court stated that "[b]efore crafting any additional remedies and procedures, it will be important

6

[for the court] to know how many class members fall into the 'aggrieved' category.  Accordingly, the nature of any claims process, the availability or not of reasonable discovery, and/or the right to trial as to any claim for monetary compensation, shall be the subject of further discussions and briefing as information about the re-review process becomes available." [2]  Blue Shield appeals.

## DISCUSSION

### *Appealability*

In its opening brief, Blue Shield asserted that the March 2014 order is appealable under Code of Civil Procedure section 904.1, subdivision (a)(2),[3] as an order made after an appealable judgment, and under section 904.1, subdivision (a)(6), as an order granting an injunction.  Plaintiffs did not dispute that assertion.  We requested supplemental briefing concerning whether the order is preliminary to further proceedings and therefore nonappealable.  (See *Lakin v. Watkins Assoc. Industries* (1993) 6 Cal.4th 644, 651 (*Lakin*); *In re Corona* (2009) 172 Cal.App.4th 1205, 1215-1219; *Roden v. AmerisourceBergen Corp.* (2005) 130 Cal.App.4th 211, 216-218; *In re Marriage of Lloyd* (1997) 55 Cal.App.4th 216, 220.)

Plaintiffs concede, and we agree, the order is not appealable under section 904.1, subdivision (a)(2), because it fails to "mak[e] a final determination

---

[2] Blue Shield asserts that it and other health insurer carriers entered into an agreement with the Department of Managed Health Care to resolve issues regarding rescission practices.  As a result of this agreement, Blue Shield has offered to provide 70 percent of the class members with reinstatement of coverage and reimbursement of medical expenses regardless of the basis for the rescission.  It states that only 9 of those members have requested new coverage and that just 32 members have requested reimbursement for their medical expenses or full damages.  The trial court indicated this evidence may be relevant in determining "how we should go forward."

[3] All statutory references are to the Code of Civil Procedure unless otherwise stated.

of rights or obligations of the parties."  (*Lakin*, *supra*, 6 Cal.4th at p. 653.)  Nor are we persuaded that the order is appealable as an injunction.  (§ 904.1, subd. (a)(6).)  Plaintiffs did not seek an injunction, and the trial court did not explicitly order one.

Both sides request, however, that we exercise our discretion to treat the purported appeal as a petition for writ of mandate.  (*Olson v. Cory* (1983) 35 Cal.3d 390, 401.)  Since the trial court's decision is reviewable by mandate, and since the issues have been fully briefed and no protest to appellate jurisdiction has been made by plaintiffs, we elect to treat the appeal as a writ petition. (*Estate of Hoertkorn* (1979) 88 Cal.App.3d 461, 463; see *Science Applications Int'l Corp. v. Superior Court* (1995) 39 Cal.App.4th 1095, 1102.)

*Standard of Review*

This appeal raises two issues.  The first is whether a trial court has equitable authority to award supplemental coercive relief to enforce a declaratory judgment in a class action.  This is an issue of law subject to de novo review. (See *California School Employees Assn. v. Kern Comm. College Dist. Bd. of Trustees* (1996) 41 Cal.App.4th 1003, 1008; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

The second issue is whether the trial court, assuming it has equitable authority to award supplemental coercive relief, appropriately weighed the competing equities in deciding to order Blue Shield to conduct a re-review of class members' health care files under the correct rescission standard.  This decision is reviewed for abuse of discretion.  (*Branscomb v. JPMorgan Chase Bank, N.A.* (2014) 223 Cal.App.4th 801, 806; *Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 770-771 ["'From the very nature of equity, a wide play is left to the conscience of the [judge] in formulating his decrees'"]; *Lortz v. Connell* (1969) 273 Cal.App.2d 286, 300 ["The trial court has discretion as to the extent of the relief to be afforded in a proceeding for declaratory relief"].)  Under this standard, reversal is required only where the court's ruling is arbitrary, capricious

8

and beyond the bounds of reason. (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431; *Walker v. Superior Court* (1991) 53 Cal.3d 257, 272.)

*Trial Court's Equitable Authority to*
*Enforce a Declaratory Judgment*

The trial court determined it has equitable authority to award supplemental coercive relief to enforce a declaratory judgment in a class action. Blue Shield contends this authority, to the extent it exists, is narrowly circumscribed. We disagree.

"An action for declaratory relief is equitable, and a court of equity will administer complete relief when it assumes jurisdiction of a controversy. [Citation.] Hence, in such an action it is proper for the court to grant any relief consistent with the evidence and the issues embraced by the pleadings. [Citations.]" (*Westerholm v. 20th Century Ins. Co.* (1976) 58 Cal.App.3d 628, 632 fn. 1; accord *Laurance v. Security-First Nat. Bank* (1963) 220 Cal.App.2d 622, 626.) As stated in *Dawson v. East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, "'"[t]he jurisdiction of a court of equity to enforce its decrees is coextensive with its jurisdiction to determine the rights of the parties, and it has power to enforce its decrees as a necessary incident to its jurisdiction. Except where the decree is self-executing, jurisdiction of the cause continues for this purpose, or leave may be expressly reserved to reinstate the cause for the purpose of enforcing the decree, or to make such further orders as may be necessary."' [Citations.] It follows that retention of jurisdiction by the court for the purpose of interpreting and enforcing its judgment is within the scope of declaratory relief. [Citations.]" (*Id.* at pp. 1044-1045; see *Shapiro v. Sutherland* (1998) 64 Cal.App.4th 1534, 1552 ["Trial courts have broad equitable power to fashion any appropriate remedies"].)

*Westerholm v. 20th Century Ins. Co.*, *supra*, 58 Cal.App.3d at page 618, is instructive. The defendants in that case filed a cross-complaint for

9

declaratory relief only. They sought a declaration that while the insurance carrier for one defendant had paid to settle the case, the coverage provided by another defendant's carrier was primary. The judgment included both a declaration of rights and an award of $15,000 from one carrier to the other. (*Id.* at pp. 631-632.) The Court of Appeal affirmed, noting that the restitution award was "embraced by the pleadings." (*Id.* at p. 632, fn. 1.)

In *Mills v. Mills* (1956) 147 Cal.App.2d 107, 118-119, the trial court declared that the plaintiff had an equitable right to real property in another state. The Court of Appeal upheld the trial court's equitable authority to enforce that declaration by granting a lien against the property. (See *Hollenbeck Lodge (486) I.O.O.F. v. Wilshire Boulevard Temple* (1959) 175 Cal.App.2d 469, 476 [trial court had authority to enjoin defendant from doing that which the court declared it had no right to do].)

Thus, "[i]t is generally recognized that since coercive relief may or may not be requested in an action for declaratory relief, a party will not be barred from seeking such relief by further proceedings *in the same or a new action*." (*Lortz v. Connell*, *supra*, 273 Cal.App.2d at p. 300, italics added; accord *Southern Counties Gas Co. v. Ventura Pipeline Constr. Co.* (1971) 19 Cal.App.3d 372, 382.) "'Consequential or incidental relief may be obtained in an action in which a declaratory judgment is sought, but the failure to seek such relief in such action or suit does not constitute a bar to other proceedings to enforce the rights determined by the judgment, *whether such proceeding is by petition filed in the declaratory action or in a separate and independent suit or action subsequently filed . . . .* [Citation.]'" (*Ibid.,* italics added.)

Moreover, in a class action such as this, the trial court must act as a fiduciary to serve as a guardian of the rights of absent class members. (*Barboza v. West Coast Digital GSM, Inc.* (2009) 179 Cal.App.4th 540, 547; *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129; *In re Equity Funding Corp. of America Securities Litigation* (N.D. Cal. 1977) 438 F.Supp. 1303, 1325.)

10

*Henry v. Merrill Farms* (N.D. Cal. 1982) 94 F.R.D. 730, 733, for example, the trial court ordered an accounting pursuant to its inherent power to act as the guardian of the rights of the absentee class members and to protect and enforce the final judgment.

Blue Shield takes a much more limited view of the trial court's authority to enforce declaratory judgments. It asserts that the purpose of a declaratory judgment is simply to declare the rights between the parties and that the *only* method of enforcing the declaratory judgment is through a separate, individual action for injunctive or monetary relief. The principal case it cites for this proposition, *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, is distinguishable. *Mycogen* held only that section 1062, which exempts purely declaratory judgments from the normal rules of res judicata, is inapplicable in "hybrid" cases where both declaratory and coercive relief are sought and granted. (*Id.* at pp. 897, 902-903.) The court explained that while purely declaratory actions leave open the possibility of subsequent actions for coercive relief to enforce the rights declared, hybrid cases do not. (*Id.* at pp. 898-900.) As the trial court observed here, "[t]he narrowly-drawn opinion in *Mycogen* eschews any attempt to delineate all of the circumstances where a court can exercise power to enforce a declaratory judgment, and that dispute did not involve a class action. Nor does *Mycogen,* or any other case cited by Blue Shield, involve the court's choice of alternative remedies within the same case."

The other cases cited by Blue Shield are similarly unpersuasive. (See, e.g., *In re Finn* (1957) 155 Cal.App.2d 705; *Lesser & Son v. Seymour* (1950) 35 Cal.2d 494; *Hercules Glue Co. v. Littooy* (1941) 45 Cal.App.2d 42.) They involve unique circumstances having nothing to do with the management of declaratory judgments in class actions. We agree with the trial court that it has equitable authority to award supplemental coercive relief where, as here, a final declaratory judgment has issued in a class action. The decision as to whether to exercise that authority, however, involves a balancing of the equities in the

11

particular case.  (*Branscomb v. JPMorgan Chase Bank, N.A.*, *supra*, 223 Cal.App.4th at p. 806.)

*Trial Court's Decision to Order Re-Review*

*of Class Members' Healthcare Files*

Blue Shield contends the equities do not favor enforcement of the declaratory judgment in this case.  Before addressing this issue, we note that the trial court has not made a final decision as to what type of supplemental coercive relief, if any, will be awarded to plaintiffs.  It has reserved that issue for further discussion and consideration.  The only action taken so far is to order Blue Shield to conduct a re-review of its health care files to identify those class members, if any, whose insurance was improperly rescinded.  Our review, therefore, is limited to whether the trial court abused its discretion by requiring Blue Shield to undertake this specific action.

The driving force behind the trial court's decision is the running of the statute of limitations.  It is undisputed that the statute has run as to most of the class members' individual claims for injunctive or monetary relief.  The court "envision[ed] the righteous indignation and betrayal class members would feel upon learning that, nine years after being improperly denied health care coverage by Blue Shield under an impermissible standard, the only tangible benefit to them might be the use of a new applicable legal standard in a yet-to-be-filed lawsuit saddled with serious statute of limitations issues."  The court found "[s]uch a result inconsistent with justice" and determined it "has the right to know how many people, perhaps with serious health problems and in acute need of health insurance, have been affected by Blue Shield's conduct, and to afford practical and concrete relief, if necessary."

Blue Shield contends it is not up to the trial court to "save" any time-barred individual claims.  It maintains that after the UCL claim was voluntarily dismissed from the action, class members were notified of their obligation to bring a separate action to pursue non-declaratory relief remedies

12

and advised that the failure to file such actions may result in the claims being time-barred. The flaw in this argument is that the notice to the class members did not advise them that they may be forfeiting the protection of the court's equitable enforcement authority. It also did not plainly inform class members that if they elected to remain in the class action, as opposed to opting out, that they would still have to file a separate action to protect their rights. To the contrary, after admonishing members about the running of the statute of limitations on individual claims, the notice implied this would not occur if the members remained in the class: "If you wish to pursue claims other than those described in this Notice, you may wish to exclude yourself from the class, but you do not necessarily have to do so. *If you remain a Class member, and plaintiffs prevail on behalf of the Class, this lawsuit will not prevent or limit your ability to pursue additional claims or seek additional remedies separately.*" (Italics added.) The trial court questioned the clarity of this notice and determined "it would be inequitable and unfair to relegate these Plaintiffs to individual lawsuits, in some cases more than a decade after an 'improper' rescission occurred, in order to vindicate their rights under the [judgment]."

The trial court also emphasized the length of time the class action has been pending. The contractual rescissions occurred between April 2003 and June 2008. It noted that some of the delay in prosecuting the action could not be avoided, but the re-review was ordered in August 2012. Instead of seeking immediate appellate review, Blue Shield spent nearly two years contesting the procedures for the re-review process. This delay has compounded the statute of limitations problem, presenting yet "another compelling reason why equitable enforcement . . . should be employed."

The trial court recognized that plaintiffs made a strategic decision to drop their injunctive relief claim. Indeed, it acknowledged that "one could conclude that [p]laintiffs are trying to take advantage of an opportunistic litigation strategy." There is no question that it took less effort to obtain the

13

declaratory judgment than it would an injunction and that "[p]laintiffs could wind up benefiting from a strategy that was pursued without the concomitant expenses or delays of trial, or the risk of collateral estoppel or res judicata consequences." The court found, however, that "one could just as likely conclude that when Blue Shield's counsel negotiated the judgment, they were fully aware that plaintiffs might seek to enforce it by way of motion, and that they intended all along to fight the case tooth and nail, while later denigrating the [judgment] as a 'sliver of a legal issue' with no practical importance."

Under these unique circumstances, the trial court determined that the parties and their counsel took calculated litigation risks as to how the court would ultimately interpret the practical significance of the judgment. It stated: "[T]o say that one side or the other has been surprised or sandbagged by the other side's tactics is untenable. In terms of equitable balancing, the opposing party's litigation tactics do not move the Court in one direction or the other."

What did move the trial court was its fiduciary responsibility to protect the rights of absentee class members. As we observed in *Bath I*, "[t]he consequences flowing from the sudden loss of health insurance resulting from injury or illness presents a financial and personal catastrophe to an insured as well as placing additional strain on health providers and government resources." (*Bath I*, *supra*, 2011 WL 3840543, at p. 4.) In ordering the re-review, the trial court noted that "[f]rom the standpoint of good business practices, the Court frankly does not understand why Blue Shield has not *already* conducted an internal review of Plaintiffs' files in order to determine the scope of the problem, as well as methods and means of finding a reasonable and prompt solution."

Having considered the trial court's well supported reasons for ordering the re-review of class members' health care files, we cannot conclude the court abused its discretion. It is possible that another court may have balanced the equities differently, but the question before us is whether any judge reasonably could have made such an order. (*In re Marriage of Hinman* (1997)

14

55 Cal.App.4th 988, 994.)  We conclude Blue Shield has not shown that the trial court's decision to order the re-review was arbitrary, capricious or otherwise unreasonable under the circumstances.  (*Ibid.*)

DISPOSITION

Blue Shield's appeal is deemed a petition for writ of mandate and is denied.  Respondents shall recover their appellate costs.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

15

Charles S. Crandall, Judge

Superior Court County of San Luis Obispo

_____

Manatt, Phelps & Phillips, LLP, Gregory N. Pimstone, Brad W. Seiling, Joanna S. McCallum, John T. Fogarty, for Defendant and Appellant.

Law Offices of Robert S. Gerstein, Robert S. Gerstein; Gianelli & Morris, Robert S. Gianelli, Jully Chang Pae; Mattison Law Firm, Raymond E. Mattison; Ernst Law Group, Don A. Ernst, for Plaintiffs and Respondents.