### In re CORRUGATED CONTAINER ANTITRUST LITIGATION.

**ADAMS EXTRACT CO., INC., et al., Plaintiffs-Appellees,**

v.

**GREEN BAY PACKAGING, INC., Defendant-Appellant.**

No. 83–2100.

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1985.

Rehearing and Rehearing En Banc Denied March 12, 1985.

138

Gibbs, Roper, Loots & Williams, Wayne J. Roper, William J. French (argued), Milwaukee, Wis., Reynolds, Allen & Cook, Inc., William E. Junell, Jr., Boris A. Hidalgo, John D. Roady, Houston, Tex., for Green Bay Packaging, Inc.

Opperman & Pacquin, Vance Opperman, Minneapolis, Minn., Corinblit, Shapero & Seltzer, Marc M. Seltzer (argued), Jack Corinblit, Los Angeles, Cal., Wright & Patton, P.C., William E. Wright, Susman, Godfrey & McGowan, Stephen Susman, Terrell W. Oxford, Baker & Botts, Robert J. Malinak, Butler, Binion, Rice, Fletcher Etheridge, Myron M. Sheinfeld, Houston, Tex., for Adams Extract, et al.

Before RUBIN, POLITZ, and GAR-
WOOD, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In this final phase of a massive class action antitrust litigation, begun seven years ago, plaintiffs seek to collect from one of the defendants the amount fixed by the court in a consent decree that incorporated the terms of a settlement agreement between the plaintiffs and that defendant. The defendant resists this effort, contending that, under a most-favored-nations clause in the agreement, it is entitled to a major reduction in the amount to be paid because of the more favorable settlements negotiated with other defendants who, it alleges, were similarly situated. We hold that the district court retained jurisdiction of such disputes by the terms of its consent decree, despite the inclusion in the decree of a dismissal of the antitrust charges against the defendant with prejudice; the defendant was not entitled to trial of the plaintiffs' motion by jury, and the district judge properly refused to recuse himself, affirming the judgment of the district court on all of these matters. Because the district court adjudicated disputed factual issues without holding an evidentiary hearing, however, we remand for a bench trial on these issues.

The history of the class action out of which this phase of the litigation arises has been fully reported.[1] The suit sought damages on behalf of purchasers of corrugated containers, alleging that 37 defendants had conspired to fix the prices of their products in violation of the Sherman Anti-Trust Act.[2] Nine months later, a federal grand jury returned indictments against fourteen of the 37 civil defendants on similar allegations. The civil proceedings were stayed until the criminal cases were concluded in April, 1979. Meanwhile, the container-purchaser subclass agreed on settlements with Green Bay Packaging, Inc. and 22 other defendants, many of whom had not been indicted, for a total of $298 million. A number of the corporate and individual defendants in the criminal case entered pleas of nolo contendere before trial, and were sentenced. The jury acquitted all of the defendants who went to trial.

The Green Bay settlement agreement provides for Green Bay to pay $5,557,000 to settle claims against it, subject to a most-favored-nations clause, the full text of which is set forth in the footnote.[3] To meet this obligation, Green Bay deposited in escrow a promissory note in the principal amount agreed upon, plus interest accord-

---

1. *See, e.g.,* In re Corrugated Container Antitrust Litigation, 1980–1 Trade Cas. (CCH) ¶ 63,163 (S.D.Tex.1979), *affirmed in part and remanded for additional findings,* 643 F.2d 195, 202–06 (5th Cir.1981), *on remand,* 1981–1 Trade Cas. (CCH) ¶ 64,114 (S.D.Tex.1981), *affirmed after remand,* 659 F.2d 1322 (5th Cir.1981), *cert. denied,* 456 U.S. 998, 1012, 102 S.Ct. 2283, 2308, 73 L.Ed.2d 1294, 1309 (1982); *In re Corrugated Container Antitrust Litigation,* 556 F.Supp. 1117, 1141–1157 (S.D.Tex.1982).

2. 15 U.S.C. § 1 *et seq.*

3. This clause provides:
   Plaintiffs agree that, unless present circumstances materially change so that plaintiffs reasonably conclude that the prospect or amount of ultimate recovery from any similarly situated defendant is substantially lessened or reduced, they will not enter into a settlement of the class actions in M.D.L. 310 with any such similarly situated defendant that is more favorable to such defendant insofar as it relates to paragraphs 5, 13 and 14 of this Agreement, or any other protective provi-

sions based on federal legislation which effectively overrules *Illinois Brick Co. v. Illinois,* 431 U.S. 720 [97 S.Ct. 2061, 52 L.Ed.2d 707] (1977), and *Hanover Shoe, Inc. v. United Shoes [Shoe] Machinery Corp.,* 392 U.S. 481 [88 S.Ct. 2224, 20 L.Ed.2d 1231] (1968), without offering similar terms to Settling Defendants hereunder; *provided,* however, that, with respect to paragraphs 13 and 14 and said protective provisions, if said Settling Defendant accepts said offer, it agrees to pay such additional amount as necessary to make the aggregate amount paid by Settling Defendant proportionately equal to the aggregate amount paid by such other defendant.
   In a letter, class action counsel defined the term "similarly situated defendant" to mean "an unindicted defendant when used in connection with the computation of the [settlement amount]." The letter also states that the only other factor bearing on the definition of this term is a defendant's ability to pay. It contains other provisions elucidating the clause.

ing to a specified formula. The agreement provides that, upon approval by the court, a "final order or judgment shall be entered dismissing with prejudice" plaintiffs' claims against Green Bay. The agreement also provides that it becomes effective only after approval by the district court after a hearing. The settlement agreements with the other defendants similarly provided for payment in accordance with the terms of promissory notes issued by each defendant.

The district court gave preliminary approval to the settlements in May, 1979 and final approval in December, 1979. Thereafter, it entered final judgments dismissing each of the settling defendants, including Green Bay, with prejudice. The court found "each of the conditions and events required by [the] settlement with [Green Bay] to be satisfied or occur prior to entry of this final judgment has been satisfied or has occurred," determined "that there was no just reason for delay," and expressly directed "the entry of this judgment of dismissal with prejudice as a final judgment." It retained jurisdiction over Green Bay in a clause reading as follows:

5. Without affecting the finality of this judgment in any way, *this court hereby retains continuing jurisdiction over* the Plaintiff Container Purchaser Subclass and *the Settling Defendant with respect to discovery disputes,* as provided in said settlement with Settling Defendant, *and this Court hereby retains continuing jurisdiction over the Settlement Fund described in said settlement, for the purpose of effectuating the settlement* and for the purpose of directing the disposition of the settlement Fund in accordance with the terms of the settlement, .... (Emphasis supplied.)

The settlement agreement describes Green Bay's promissory note and monies due thereon as the "Fund."

All of the other erstwhile defendants have paid their notes, but Green Bay asserts that the plaintiffs violated the settlement agreement by accepting lower proportionate amounts from other defendants without proper justification. Therefore, while prior orders in this case were on appeal, plaintiffs filed a declaratory judgment action against Green Bay, seeking a judicial determination that Green Bay was obligated to pay the full amount of its note. Shortly after that action was filed, Green Bay refused to make the payments then due. Plaintiffs then sought a summary order from the district court directing Green Bay to comply with its agreement.

Before the hearing on the motion to enforce the agreement, Green Bay had answered the complaint in the declaratory judgment action denying liability, alleging several affirmative defenses and raising a counter-claim for the sum it had already paid in excess of the amount it contended was due. In addition, Green Bay moved that the district judge recuse himself, but the district court denied that motion. Green Bay also served interrogatories and a document-production request. Plaintiffs objected to these discovery efforts and Green Bay filed a motion to compel discovery, but the district court has never ruled on the motion. Neither Green Bay nor the plaintiffs requested a jury for any of these proceedings.

After a hearing at which the district court heard oral argument but no evidence, the district court ordered Green Bay to comply with the consent decree and to pay the total amount of principal and interest due. The appendix contains no formal notice of that hearing, but Green Bay asserts, and the plaintiffs do not deny, that the parties were notified by the district judge's law clerk in a telephone conversation that the judge wanted to hold a hearing on the plaintiffs' motion.

## I.

Green Bay contends that the district court lacked personal jurisdiction over it after the final judgment was entered. The settlement fund, it argues, over which the court retained jurisdiction, was merely the promissory note, not the proceeds of that note.

This interpretation is not consistent with the language of the judgment. The court retained jurisdiction over the settlement fund not only to direct its disposition, which could not, of course, be "allocated" or "distributed" unless it were collected, but also "for the purpose of effectuating the settlement." The court's jurisdiction, therefore, was not limited to distribution of what was collected, if, as, or when collected, but extended to whatever was necessary to bring about or accomplish ("effectuate") the settlement. This is also reflected in Paragraph 2 of the agreement which requires the parties to agree to take any steps necessary "by order of court or otherwise" to carry out its terms. In accordance with the terms of the settlement agreement, the note is payable in full on or before March 1, 1981, or ten days after any order of the court authorizing or directing distribution to the class of any settlement funds paid by any other defendant in the action, whichever is earlier. In context, it is plain that the parties and the district court contemplated that Green Bay would be required to make all the settlement payments before complete and final resolution of all the remaining claims pending in the litigation. Under the circumstances of this case, we construe the district court's judgment to be, in effect, one ordering Green Bay to make the payments called for by the note.

That the judgment also dismissed Green Bay "with prejudice" does not free it from the jurisdiction of the court with regard to the settlement agreement. The judgment terminates Green Bay's liability for charges of antitrust violation "with prejudice," but does not end its obligations under that self-same judgment.

■ Interpreting the judgment as reserving personal jurisdiction to collect the fund not only conforms to its literal terms, but also makes the judgment implement the court's duty to act as the ultimate guardian of the interests of the class members.[4] In a class action, the district court has a duty to class members to see that any settlement it approves is completed, and not merely to approve a promise, even in the form of a negotiable instrument, to pay the relief to which it has decided class members are entitled. In order for the court to retain personal jurisdiction over Green Bay, therefore, it was not necessary for it to rely only on its inherent power to enforce settlements entered into for the purpose of terminating litigation.[5]

Green Bay cites three cases to support its argument that, when the district court entered the judgment of dismissal, the court lost personal jurisdiction over it save for discovery.[6] None justifies the reliance sought to be placed on it.

In *Fairfax Countywide Citizens v. Fairfax County*,[7] the Fourth Circuit held that

**4.** *Beecher v. Able,* 575 F.2d 1010, 1016 (2d Cir. 1978); *Zients v. LaMorte,* 459 F.2d 628, 630 (2d Cir.1972); *Henry v. Merrill Farms,* 94 F.R.D. 730, 733 (N.D.Cal.1982). *See generally* Manual for Complex Litigation § 1.46 (5th ed. 1982).

**5.** *Lee v. Hunt,* 483 F.Supp. 826 (W.D.La.1979), *aff'd,* 631 F.2d 1171, 1173–74 (5th Cir.1980), *cert. denied,* 454 U.S. 834, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981) ("federal courts possess the inherent power to enforce settlements entered into in settlement of litigation"); *Pearson v. Ecological Science Corp.,* 522 F.2d 171 (5th Cir.1975), *cert. denied sub nom., Skydell v. Ecological Science Corp.,* 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976) (settlement in class action case enforced); *Cia Anon Venezolana de Navegacion v. Harris,* 374 F.2d 33, 35 n. 1 (5th Cir.1967) ("federal courts have held under a great variety of circumstances that a settlement agreement once entered into cannot be repudiated by either par-

ty and will be summarily enforced") (collecting cases); *accord Dankese v. Defense Logistics Agency,* 693 F.2d 13 (1st Cir.1982); *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368 (6th Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976); *Howard v. Chris-Craft Corp.,* 562 F.Supp. 932 (E.D.Tex.1982); *cf. Mull v. Marathon Oil Co.,* 658 F.2d 386 (5th Cir.1981) (out-of-court settlement enforced by motion following dismissal of case).

**6.** *Fairfax Countywide Citizens v. Fairfax County,* 571 F.2d 1299 (4th Cir.), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978); *U.S. Industries v. Anderson,* 579 F.2d 1227 (10th Cir. 1978); *First National Bank v. Marine City, Inc.,* 411 F.2d 674 (3d Cir.1969).

**7.** 571 F.2d 1299 (4th Cir.), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978).

the district court had the power to vacate a dismissal order that was based on a settlement agreement not mentioned in its order, but it lacked power to enforce that agreement because the agreement had not been approved by the court. The court declared, however, that it would have sustained the district court's jurisdiction to enforce the agreement had the settlement been so approved and incorporated into its decree.[8] It is unnecessary for us to approve the result reached by the Fourth Circuit, which may be contrary to Fifth Circuit opinions concerning the inherent power of a district court to enforce an agreement settling litigation pending before the court.[9] Even if the Fourth Circuit doctrine is sound, the rationale of its holding is not applicable here and its dicta approves the course we take.

In *U.S. Industries v. Anderson*,[10] the Tenth Circuit held only that the district court lacked jurisdiction to issue such an order requiring continuance of the payment of disputed stock dividends during the litigation. There had been no court-approved settlement and no court order or judgment of any kind that would have been protected or effectuated by the issuance of the requested injunction. Thus, there was no conceivable basis for the district court's order.

The third case, *First National Bank v. Marine City*,[11] involved the voluntary dismissal of third party defendants following the making of an out-of-court settlement, which had not been supervised or approved by the court.

The proceeding against Green Bay was brought to enforce a settlement contract. But this agreement was more than a bargain struck between two parties; this contract had been approved by the court, had become a part of the consent decree, and had merged in that decree.[12] The district court had not merely rubber stamped the contract. Instead, as required by Fed.R. Civ.P. 23, it had held hearings on the fairness of the compromise[13] and then entered a judgment that had the force of law.[14] We find nothing in the authorities cited by Green Bay that alters either the meaning of the court's judgment or the power of the district court to enforce Green Bay's promise to pay. While we do not reach the question of whether every order terminating litigation on the basis of a court-approved settlement necessarily implies that the court has ordered the carrying out of all post-dismissal actions called for by the settlement agreement, or has retained jurisdiction for that purpose, here the district court's action had that effect.

## II.

■ In its opinion directing Green Bay to comply with the terms of the settlement agreement, the court states that it held a hearing at which it heard argument. It referred to this hearing as a "plenary hearing," and correctly noted "[a] plenary hearing is required when a factual dispute concerning the settlement exists."

There is no doubt that there were material facts in dispute. Indeed, Green Bay

8. *Id.* at 1303, n. 8.

9. *See, e.g., Massachusetts Cas. Ins. Co. v. Forman,* 469 F.2d 259 (5th Cir.1972); *Cia Anon Venezolana de Navegacion v. Harris,* 374 F.2d 33 (5th Cir.1967). The decision of the district court in *Lee v. Hunt,* 483 F.Supp. 826, which was affirmed by this court, questioned the soundness of the Fourth Circuit's reasoning in *Fairfax County.*

10. 579 F.2d 1227 (10th Cir.1978).

11. 411 F.2d 674 (3d Cir.1969).

12. *United States v. City of Miami, Florida,* 664 F.2d 435, 439–40 (5th Cir.1981) (en banc) (Ru-

bin, J., concurring); *United States v. Kellum,* 523 F.2d 1284, 1287 (5th Cir.1975).

13. Fed.R.Civ.P. 23(e) provides:
   (e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

14. *United States v. City of Miami, Florida,* 664 F.2d 435, 439 (5th Cir.1981) (en banc) (Rubin, J., concurring).

suggests that there were nine disputed factual issues, phrasing them as follows:

1. Which of seven unindicted companies which settled after Green Bay are "similarly situated" to Green Bay for purposes of the Agreement?

2. Did plaintiffs initially have any reasonable basis to conclude that they had the right to ultimately recover a substantial amount from these unindicted companies?

3. What amount did plaintiffs initially conclude they were entitled to recover for each of these unindicted companies?

4. What time frame does the term "present circumstances" include?

5. Must plaintiffs' reasonable conclusions be based upon the type of objective facts specified in the agreement?

6. Must there be a reasonable causal relationship between the circumstances plaintiffs claim changed and their conclusion that their right to recovery was substantially reduced?

7. Did circumstances occurring after the acquittals in fact enhance rather than reduce plaintiffs' chance to recover from the seven unindicted companies?

8. Did any event claimed by plaintiffs to be a material change in circumstances actually constitute a change at all, and if so, was it material?

9. By what amount of money did plaintiffs actually conclude their ultimate right to recovery from each similarly situated company was reduced?

Despite the existence of these factual disputes, however, the court did not give the parties notice of a plenary or evidentiary hearing. The court, could, of course, take judicial notice of the lengthy record of prior proceedings and of its knowledge of them. The court afforded no opportunity, however, for Green Bay to adduce evidence to the contrary.

▪ Summary enforcement of a consent judgment, like summary enforcement of a settlement agreement, "is ill-suited to situations presenting complex factual issues related either to the formation or the consummation of the [settlement] contract, which only testimonial exploration in a more plenary proceeding is apt to satisfactorily resolve."[15] Therefore, we conclude that the district court erred in failing to conduct an evidentiary hearing.

### III.

▪ The existence of disputed questions of fact does not necessarily entail the right to a jury trial. In the absence of direct precedent, we consider this question, taking into account the terms of the seventh amendment and the need for efficient judicial administration.

The seventh amendment to the Constitution provides: "In suits at common law, where the value of the controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." This creates a historical test for trial by jury, but to apply this standard, the court must do more than simply determine whether the plaintiff has stated a claim for relief in his complaint that would have been triable to a jury when the amendment was adopted in 1791. Instead, the court must consider all of the issues raised in the case in order to determine the method of trial.[16] Pleadings subsequent to the complaint may raise the issues that require a jury trial, even though the complaint sought only equitable relief.[17]

15. *Russell v. Puget Sound Tug & Barge Co.*, 737 F.2d 1510 (9th Cir.1984), *quoting Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C.Cir.1969). *See also Millner v. Norfolk & W.R. Co.*, 643 F.2d 1005, 1009 (4th Cir.1981); *Kukla v. National Distillers Products Company*, 483 F.2d 619, 621 (6th Cir.1973); *Massachusetts Casualty Insurance Co. v. Forman*, 469 F.2d 259, 260 (5th Cir.1972).

16. *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970).

17. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508, 79 S.Ct. 948, 955, 3 L.Ed.2d 988 (1959).

This analysis, although followed in this circuit,[18] does not dispose of the question presented here. The plaintiffs' complaint, alleging violations of the antitrust laws, raised issues properly triable by a jury. Moreover, both the plaintiffs and Green Bay made timely demands for a jury trial on all issues triable by jury. Had the case proceeded to trial, there is no doubt that the parties would have been entitled to have a jury resolve the questions of fact arising from the plaintiffs' original antitrust claims.

But these issues were never tried. Instead, the parties chose to resolve the litigation by means of a settlement agreement that was incorporated into the court's final judgment dismissing the plaintiffs' claims, both at the parties' request and because of the requirements of Fed.R.Civ.P. 23, which regulates the conduct of class actions. The parties' original demands for a jury trial thus has no effect, because all of the issues the parties sought to have a jury resolve have been settled.[19] The only remaining issues of fact do not stem from the plaintiffs' original antitrust claims or any defenses to those claims; they arise solely from steps taken to enforce the district court's decree and concern only matters that bear on the meaning of that decree which is in effect a final judgment ordering Green Bay to make the payments called for in the note.

The plaintiffs' motion to enforce the court's judgment cannot be viewed as a separate "suit at common law" that would require a jury trial under the seventh amendment. The plaintiffs did not institute a separate lawsuit to enforce this decree; they simply filed a motion in a seven-year-old class action suit. An action to enforce a judgment has been viewed by some courts as an equitable proceeding to be resolved by the court, although there is also authority·to the contrary.[20]

Finally, although we are aware of, and share, the preference for jury trials implied by the seventh amendment even beyond its literal command,[21] "the Seventh Amendment," as the Supreme Court has said, "was never intended to establish the jury as the exclusive mechanism for fact-finding in civil cases."[22] Many factual issues, collateral to those involved in a suit as defined by the complaint and answer, may arise. Discovery disputes may involve factual issues. Once judgment is entered, efforts to set it aside may depend on factual questions. When a party seeks enforcement of a decree in a class action, the issues raised, whether factual or legal, are incident to the principal dispute and arise only after resolution of that dispute. We see no reason to divorce the power to interpret and enforce a judgment incorporating and ordering performance of a settlement agreement from the court that rendered it. To do so would not only delay the conclusion of the class action, but would lead the trial court into a procedural maze, for the enforcement proceeding would presumably be treated as a brand new action, with new pleadings, new

See generally 9 C. Wright & A. Miller, Federal Practice and Procedure § 2304 (1971).

**18.** See, e.g., Guajardo v. Estelle, 580 F.2d 748 (5th Cir.1978); Swofford v. B & W, Inc., 336 F.2d 406 (5th Cir.1964), cert. denied, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965).

**19.** Contra Millner v. Norfolk & Western Ry. Co., 643 F.2d 1005 (4th Cir.1981).

**20.** Compare Missouri Pac. Transp. Co. v. George, 114 F.2d 757 (8th Cir.1940) (action to enjoin enforcement of judgment does not entitle plaintiff to jury trial); and Reynolds v. Harrison, 635 S.W.2d 845 (Tex.App. Tyler 1982, writ ref'd n.r.e.) (court has inherent authority to enforce its judgment through equitable proceedings)

with Steenland v. Texas Commerce Bank Nat'l Ass'n, 648 S.W.2d 387 (Tex.App. Tyler 1983); and Webb v. Webb, 602 S.W.2d 127 (Tex.Civ. App. Austin 1980) (parties entitled to jury trial to resolve factual questions surrounding judgment).

**21.** See Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963); Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). See generally 9 C. Wright & A. Miller, Federal Practice and Procedure § 2302 (1971).

**22.** Atlas Roofing Co., Inc. v. Occupational Safety and Health Review Comm'n, 430 U.S. 442, 460, 97 S.Ct. 1261, 1271, 51 L.Ed.2d 464 (1977).

motions, and new pretrial procedures. Therefore, we find that Green Bay is not entitled to have a jury decide the remaining disputed issues of fact in this litigation.

## IV.

■ Green Bay urges that the district judge should have disqualified himself. This argument, assiduously asserted and stoutly maintained, does not survive even superficial analysis. Green Bay has neither alleged nor proved the slightest "personal bias derived from an extrajudicial source," allegations that are critical to a motion to recuse.[23]

■ Green Bay argues that, during the course of pretrial conferences on May 16, 1979, and December 16, 1979, and in the district court's opinion of December 21, 1979, the court made "prejudicial" statements in characterizing the most-favored-nations clause and that these statements demonstrated "such pervasive bias and prejudice as to require recusal." On each of the three occasions, the district court made observations on the proceedings or judicial rulings. These comments may suggest early judgment on a legal matter, but they contain no hint of extrajudicial bias or prejudice against a party.[24] To be disqualifying, the alleged bias must be extrajudicial and not based upon in-court rulings.[25]

■ Green Bay urges that we order the case to be assigned to another judge on remand. The suggestion is unwarrantedly invidious. The district judge has given us no reason to believe that he will not continue to conduct these proceedings fairly or that he will not impartially weigh the evidence that may be submitted. "Although appellate courts do have authority on remand to avoid even the appearance of bias,

such mandatory reassignments should be made infrequently and with the greatest reluctance."[26] We are confident that the district judge who has heard the case to this stage is capable of according Green Bay the fair hearing to which it is entitled, and therefore, decline to prejudge his ability by assigning this case to another judge.

For these reasons the case is REMANDED to the district court for an evidentiary hearing on the remaining disputed issues.

**23.** *In re Corrugated Container Antitrust Litigation,* 614 F.2d 958, 964 (5th Cir.), *cert. denied,* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980) (collecting cases).

**24.** *See In re International Business Machines Corp.,* 618 F.2d 923, 929 (2d Cir.1980).

**25.** *United States v. Haldeman,* 559 F.2d 31, 132 n. 297 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933,

97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *Davis v. Board of School Commissioners,* 517 F.2d 1044, 1052 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).

**26.** *Koller v. Richardson-Merrell, Inc.,* 737 F.2d 1038, 1067 (D.C.Cir.1984) (Richey, J., concurring) (citations omitted); *see also Spivey v. Zant,* 683 F.2d 881, 886 n. 6 (5th Cir.1982).