# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 10, 2022

Lyle W. Cayce
Clerk

No. 20-20309

Vikas WSP, Limited,

*Plaintiff—Appellant*,

*versus*

Economy Mud Products Company,
*also known as* Economy Polymers & Chemical, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
No. 4:13-CV-3426

Before Higginbotham, Smith, and Ho, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

"Things fall apart; the centre cannot hold; / Mere anarchy is loosed upon the world."[1]  Yeats, we're sure, was describing this case.

Vikas WSP, Limited, and Economy Mud Products Company settled a

---

[1] William Butler Yeats, *The Second Coming* (1920), *in* Selected Poems and Four Plays of William Butler Yeats 89, 90 (M.L. Rosenthal ed., 4th ed. 1996).

No. 20-20309

bitter commercial dispute. The district judge dismissed with prejudice but retained jurisdiction to enforce the settlement. Then the settlement blew up, bringing years more of vicious conflict before the court entered three orders purporting to enforce the settlement: (1) an order declaring that Vikas breached the settlement; (2) an order striking Vikas's pleadings as a sanction; and (3) a summary judgment that Vikas had procured the settlement by fraud, causing $40 million in damages. Vikas appeals those rulings.

Sifting through the wreckage, we must decide whether the anarchy may continue. Some of it can.

The district court lacked subject-matter jurisdiction to issue the summary judgment for fraud, so we vacate it and deny as moot Vikas's related appeals. By dismissing the original suit, the district court relinquished jurisdiction over the controversy except to enforce the parties' settlement. That limited power does not extend to hearing tort claims—even one that arises from or relates to the settlement.

We then vacate the sanctions order. Insofar as the order strikes Vikas's pleadings in the dispute that the parties had settled, we vacate it for want of subject-matter jurisdiction. And insofar as the order denies Vikas's motions in the parties' post-settlement controversy, we vacate it as an abuse of discretion.

Lastly, we vacate the ruling that Vikas breached the settlement. In his terse 250-word decree, the district judge ignored key provisions of the settlement and failed to support his judgment with relevant record evidence. Because we are "a court of review, not of first view," we cannot affirm on such flimsy grounds. *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017) (cleaned up). We thus remand for further findings of fact.

## I.
## A.

Vikas is an Indian firm that makes guar-gum products. Vikas takes raw guar beans from suppliers and converts them into finished guar-gum products and powders, which it sells to customers around the world. Guar gum has many uses. It stabilizes popular foods, from meat to ice cream, and has sundry industrial applications.

Economy, a Texas firm, makes drilling muds, which it thickens with guar-gum powder. Economy bought that powder from Vikas for many years. After receiving a purchase order from Economy, Vikas would buy guar beans from suppliers, convert them into guar powder, and sell that powder to Economy. But after several deliveries failed Economy's quality checks, Economy canceled its remaining orders.

Unhappy with that, Vikas went nuclear and filed this $230 million breach-of-contract claim. Back in India, Vikas allegedly cooked up false criminal complaints against Economy, its corporate officers, and its local partners. Economy also says that Vikas's managing director, B.D. Agarwal, threatened to maim Economy's employees and to burn down the factory of one of Economy's Indian partners.

Economy soon agreed to settle for $80 million, to be paid in installments. In exchange, Vikas agreed to ensure, by year's end, that "all sellers of guar seed" that was "ordered or purchased for" Economy were "paid in full." Vikas also agreed to show Economy records of those payments and to divulge any changes made to its contracts with those guar suppliers.

If Economy accused Vikas of defaulting on either promise—the promise to pay the suppliers in full, or the promise to disclose any payments or amendments to agreements with Vikas's suppliers—Vikas would have fifteen days to cure before Economy could cease performing the settlement.

Any other breach would entitle Economy to cease performance immediately. Vikas also pledged to indemnify Economy for claims by participants in an Indian guar-seed distribution program, to dismiss all criminal actions against Economy and its employees, and to desist from all threats or harm to Economy's business, property, affiliates, and customers.

After Vikas and Economy executed the settlement, they asked the court to dismiss the suit with prejudice. The court did so, but "retain[ed] jurisdiction to enforce the settlement."

Months later, two guar suppliers, whom we'll call "NM," told Economy, in sworn affidavits, that Vikas hadn't paid them as it had promised in the settlement agreement. Economy soon demanded proof from Vikas that it had paid the suppliers in full. Within the fifteen-day cure period, Vikas answered that it had paid the suppliers' claims. It attached an agreement, plus a bevy of financial records, that it said confirmed that it paid NM.

Unsatisfied with that proof, Economy ceased its settlement payments. Vikas then moved the district court to enforce the settlement. That motion launched the proceedings that Vikas asks us to review.

### B.

Though Vikas appeals several orders, we address only three: (1) the ruling that Vikas breached the settlement; (2) the order striking Vikas's pleadings; and (3) the summary judgment for fraud. The subsections that follow explain how each order arose.

### 1.

We turn first to the ruling that Vikas breached the settlement. Economy challenged Vikas's agreement with NM on two grounds.

*First*, Economy claimed that the agreement was fake. It alleged various irregularities in the document and pointed to testimony and documentary

evidence suggesting that NM's representative, Manoj Gupta, could not have signed it on the date alleged.

Vikas retorted that Gupta had withdrawn money from a bank account in the city where he signed the agreement on the day that it was signed. Vikas pointed again to the bank records it had produced, and it attached shipping bills evidencing that it had sent NM many truckloads of guar-gum splits as a payment in kind under their agreement.

Relying again on Gupta's testimony, Economy claimed that Gupta's *brother* had withdrawn the funds and that Vikas had omitted the brother's endorsement from the image of the check that it submitted to the court. Economy also attached testimony from the Indian official who had notarized the Vikas–NM agreement. That official said that he attested only a copy of the settlement, not the original.

Much later in the case, Vikas presented testimony from Gupta, in which he admitted that he had lied to the district judge. According to Gupta, Vikas *had* paid NM in full after all.

*Second*, Economy argued that even if the Vikas–NM agreement were real, Vikas did not pay NM in full as the settlement with Economy required. According to Economy, the phrase "paid in full" in the settlement meant that Vikas had to pay NM "in full" *and* "in cash." And because Vikas paid NM, in part, with guar-gum splits and seeds, Economy said, Vikas did not pay the suppliers in full. Vikas responded that it never agreed to pay the suppliers only in cash and that in-kind payments are commonplace in the industry.

Economy also contended that even if the settlement allowed in-kind payments, Vikas's payments did not suffice because Vikas and the suppliers "settled" (*i.e.*, canceled) 2.874 billion rupees worth of claims. Vikas replied that the canceled amount was "for guar gum that was never shipped" and

No. 20-20309

that had been "invoiced" to Vikas only "for accounting purposes."

In its motion for sanctions, which we'll address later, Economy sought, in the alternative, a judgment that Vikas breached the settlement. After Vikas responded, the court ordered sanctions, saying nothing of the alternative motion.

Half a year passed. Then the district court denied NM the right to intervene in the suit. Midway through his four-page opinion on intervention, the judge digressed on "Economy's breach of contract claim against Vikas." This is all he wrote:

> Economy argues that Vikas breached the settlement by (a) failing to insure [sic] that all suppliers were paid in full by December 31, 2014; (b) failing to disclose modifications to the suppliers' contracts; and (c) breaching its warranty about payments it had made to suppliers.
>
> The settlement required Vikas to pay all suppliers fully. Vikas argues that its duty was discharged by a purported agreement with [NM]. The express terms of the agreement demonstrate Vikas's breach: Economy bargained for all suppliers to be paid in full; nothing about Vikas's accord with [NM] constitutes payment in full. Economy gave Vikas money to pay the suppliers. To have that money held by Vikas is in violation of the settlement.
>
> Vikas agreed to disclose by December 26, 2014, information about each supplier, including the supply contracts and any amendments, modifications, and novations. On July 7, 2015, Vikas identified—for the first time—its release agreement with [NM]. Vikas's failure to disclose on time that agreement constitutes another breach of the settlement—if, as is highly improbable, it is real.
>
> Vikas warranted that [NM] had received payments . . . for guar they had supplied for Economy's 2012 purchases. On

No. 20-20309

June 17, 2015, Economy discovered that no payments, in cash or in kind, had ever been made . . . .

The settlement is clear: one breach excuses performance by the non-breaching party. Three breaches by Vikas are compellingly clear—Economy has no further obligation under the settlement.

The district court then denied NM's motion to intervene. "Because of Vikas's breaches," the court explained, "the settlement" between Vikas and Economy "no longer exists."

2.

Vikas also appeals the order striking its "pleadings" as a sanction. As we've discussed, Economy contested the authenticity of Vikas's agreement with NM. Because Vikas couldn't produce an original version of that agreement, NM moved to compel production of the computer on which it was drafted. The district court ordered Vikas to deliver the computer to the court for forensic analysis, over Vikas's objection that the computer could be examined in India with much less risk and disruption.

Vikas entrusted the computer to a courier. While en route from rural India, the courier stopped for tea, leaving the computer on the train unattended. When he returned, the computer was gone. Vikas hadn't backed up the hard drive. Economy then moved for sanctions.

The court obliged. In a one-page order, the court struck all of Vikas's "pleadings" in the case. Though never explaining its legal basis, the order stated six reasons for the sanction:

- Vikas "exhausted two sets of lawyers";
- Vikas "entered and breached" its settlement with Economy;
- Vikas offered, as discovery, "tables of data that are unrelated to operating papers";

7

No. 20-20309

- Vikas "fabricated" data that it gave to the court;
- Vikas "'lost' the hard drive" that the court had ordered it to produce; and
- Vikas's director lied that he had a court appearance in India to excuse his failure to appear before the district judge.

Later, Gupta, NM's representative, admitted that NM's agreement with Vikas was valid and that NM had been paid in full. Arguing that the admission weakened the sanction's basis, Vikas moved the court to reconsider its order. The court denied that motion without explanation.

### 3.

Third, Vikas appeals the summary judgment for fraud. The district court offered two reasons for that judgment. *First*, Vikas breached several provisions of the settlement. Those breaches, the district judge thought, were so egregious that Vikas must have intended to defraud Economy. *Second*, the judge rehashed the conduct that he had cited to justify the sanctions order: the lost hard drive, the withdrawal of Vikas's counsel, and so forth. He also claimed that Vikas had forged and fabricated evidence throughout the case.

Concluding that "[n]o reasonable person could find . . . that [Vikas] intended to honor" the settlement with Economy, the court awarded Economy $40 million—the amount Economy had paid to date under the settlement. It also awarded Economy its costs in litigating Vikas's motion to enforce the settlement.

### II.

Vikas presents several issues for our review. We need only address three to resolve this case.

*First*, we must decide which orders the district court had subject-

8

No. 20-20309

matter jurisdiction to issue.  After dismissing the case, the court retained the power "to enforce the settlement."  Finding a breach of the settlement is well within that power.  The sanctions order is, too—insofar as it addresses Vikas's post-settlement motions before the court.  But the summary judgment for fraud exceeds that power, so we vacate it and deny as moot Vikas's appeals of the damages and interest on that judgment.

*Second*, we turn to the merits of the sanctions order, which we vacate.  Such severe sanctions cannot survive review without careful findings of fact, and "careful" cannot describe the district court's one-page, 160-word order ending Vikas's case.  The court stressed irrelevant or unsupported findings, never explained the sanction's legal basis, and never seriously considered lesser sanctions.

*Third*, we review the ruling that Vikas breached the settlement.  Once again, the district court's paltry order cannot support its judgment.  With regret that this years-long saga must continue, we vacate and remand for further findings of fact.

## III.
### A.

We turn first to subject-matter jurisdiction.  We always may question our power to hear a case, even when no one else does. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  We thus vacate, for want of jurisdiction, the summary judgment for fraud.

At first glance, the court's power to grant the summary judgment seems obvious. Economy, a Texas firm, clashes with an Indian guar producer over a multimillion-dollar settlement.  That satisfies the requisites of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(2).

But the court dismissed with prejudice Vikas's original breach-of-

9

contract suit. By dismissing, the court relinquished its power over the case except to enforce the settlement. Proclaiming a breach of that settlement falls within that retained power. But determining a related tort claim does not, so the court was not empowered to issue the summary judgment for fraud.

1.

A dismissal "ordinarily—and automatically—strips the district court" of the power to hear that dispute. *Def. Distributed v. U.S. Dep't of State*, 947 F.3d 870, 873 (5th Cir. 2020) (cleaned up). But that rule has two crucial caveats, which we may unite under the name "ancillary jurisdiction."

*First*, even after dismissal, the court may hear matters that are inextricably linked with the original dispute. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379 (1994). Compulsory counterclaims are a classic example. *See* FED. R. CIV. P. 13(a). When a party brings a federal suit, his opponent must use or lose all counterclaims arising from the same "transaction or occurrence." *Id.* The federal court may decide those counterclaims even after it has resolved the plaintiff's original claims and even if it could not hear those counterclaims had they been brought in a separate suit. *See, e.g.*, *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974); *see also* 28 U.S.C. § 1367.

*Second*, the court may "manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 380. Thus, a court may sanction a lawyer for misconduct, award attorney's fees, or hold parties in contempt even after dismissing a case. *See Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010). The court also may protect its judgments; that's how it may enforce a settlement. When the parties settle their dispute and seek dismissal, the court may choose to treat the parties' settlement as part of its dismissal order, either by retaining jurisdiction to enforce the settlement or by directly integrating the settlement into the dismissal order.

If the court does that, breaching the settlement would violate the court's order, "and ancillary jurisdiction to enforce the agreement would therefore exist." *Kokkonen*, 511 U.S. at 381.

In its order dismissing Vikas's original suit, the court explicitly retained jurisdiction "to enforce the settlement" between Vikas and Economy. That language integrated the parties' settlement into the final order. *See id.* at 381–82. Enforcing the settlement thus falls within the court's unquestionable power to enforce its own decrees. *Id.* at 380.

But the power to enforce a settlement is just that. It's not a blank check. It doesn't authorize the district court to reach new issues or issues that only relate to the settlement. The court may decide "whether and under what terms" to enforce the settlement, but it may go no further without an independent basis for jurisdiction. *Wise v. Wilkie*, 955 F.3d 430, 436 (5th Cir. 2020) (cleaned up).

The decision in *Triple S Properties Inc. v. St. Paul Surplus Lines Insurance Co.*, No. 08-CV-796, 2010 WL 3911422 (N.D. Tex. Oct. 5, 2010), illustrates those limits. An insurer and the insured agreed to settle their dispute over the value of insured property by submitting to an appraisal. The court retained jurisdiction to enforce that settlement. After the appraisal produced a higher value than the insurer had hoped, the insurer brought five claims to set aside the appraisal. Three of them pointed to departures from the agreed-upon appraisal process. But for the last two claims, the insurer accused the appraiser of fraud and mistake. The insured counterclaimed for breach of contract and unfair settlement practices.

The district court decided that it lacked jurisdiction to hear the insurer's claims of fraud and mistake, as well as the insured's counterclaims. It found that the claims of fraud and mistake are "attacks not upon the procedure of the appraisal" as determined by the parties' settlement, but "upon

No. 20-20309

the validity of the appraisal and the decision of the [appraiser]." *Id.* at \*3. Such claims, the court continued, "are not necessarily connected" to the settlement, so they were not within the court's power to enforce the settlement. *Id.* Turning to the insured's counterclaims, the court noted that both centered on the underlying insurance policy, not the settlement agreement, so the court's retained jurisdiction didn't extend to them, either. *Id.*

2.

We now must decide which of the district court's rulings are within its retained jurisdiction to enforce the settlement. Our caselaw leaves no doubt that the court could rule that Vikas breached the settlement. *See, e.g.*, *In re Corrugated Container Antitrust Litig.*, 752 F.2d 137, 142 (5th Cir. 1985); *Wise*, 955 F.3d at 436. We don't see how a court could enforce a settlement without deciding whether and how it has been breached. Likewise, because a court may regulate the conduct of the parties before it, it could sanction parties to a post-settlement proceeding. *See Qureshi*, 600 F.3d at 525.

But the power to enforce the settlement cannot support the summary judgment for fraud. Fraud is not merely a defense to contract formation, like the doctrine of mutual mistake. *Cf. Wise*, 955 F.3d at 439. Fraud is a tort. The duty not to commit fraud is "an independent legal duty" that is "separate from the existence of the contract itself." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors*, 960 S.W.2d 41, 47 (Tex. 1998). A party's fraud may relate to the settlement. Inducing the settlement may be the only damage it causes. *See id.* Even then, the fraud has no necessary connection with the settlement's enforcement or nonenforcement. Both parties could perform fully, precluding an action to enforce or escape the settlement. Yet a fraud claim still would lie.[2]

---

[2] *Cf. Formosa Plastics*, 960 S.W.2d at 46; *see also Fazio v. Cypress/GR Hous. I, L.P.*,

No. 20-20309

If the district court could hear Economy's fraud claim through its retained power to "enforce the settlement," we see no reason why it could not hear any tort claim arising from or related to the settlement. That would stretch retained jurisdiction too far. The power to enforce a settlement is just that; it is not a power to reach all related claims and theories of recovery.[3]

3.

The summary judgment was not within the court's power to enforce the settlement. It also lacked an independent jurisdictional basis because, by dismissing Vikas's original suit, the court surrendered its power over the controversy.

*Kokkonen*'s premise is that a district court loses its power over a case once that case is dismissed.[4] The court may retain jurisdiction for certain limited purposes, such as enforcement of a settlement, to protect its authority and judgments. *See Kokkonen*, 511 U.S. at 381. But when dismissal occurs and retained jurisdiction runs out, that district court may not hold on to the

---

403 S.W.3d 390, 398 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (en banc) ("While a contract undoubtedly can affect the scope of a legal duty to not commit fraud and is essential in determining the measure of damages for fraudulent inducement, the tort itself . . . does not arise from the contract's operation—it [is] a pre-contract tort to induce [the contract of sale]." (citation omitted)).

[3] *See, e.g.*, *Myers v. Richland Cnty.*, 429 F.3d 740, 747–49 (8th Cir. 2005) (dismissing tort claims for lack of subject-matter jurisdiction, despite the court's retention of jurisdiction to enforce the settlement). We don't decide here whether a district court, in a final order retaining jurisdiction to enforce the parties' settlement, also could retain the power to resolve any tort claims related to that settlement.

[4] *Hendrickson v. United States*, 791 F.3d 354, 360 (2d Cir. 2015); *see also Def. Distributed*, 947 F.3d at 872 ("The court lost jurisdiction when the parties voluntarily dismissed the entire suit . . . ."); *Kokkonen*, 511 U.S. at 379 (explaining that the Court never has, "for purposes of asserting *otherwise nonexistent federal jurisdiction*" after a dismissal, "relied upon a relationship so tenuous as the breach of an agreement that produced th[at] dismissal" (emphasis added)).

case, or capture its offshoots, any longer.[5]

We don't doubt that diversity jurisdiction persists over the disputes between Vikas and Economy. They are diverse parties disputing huge sums of money. But more is needed to reopen a closed case.[6] An "independent basis for *federal* jurisdiction" is not also an independent basis for *this district court's* jurisdiction. *Kokkonen*, 511 U.S. at 382 (emphasis added). If it were, the federal rules' provisions for altering a judgment, *see* FED. R. CIV. P. 59, and for seeking relief from a judgment, *see* FED. R. CIV. P. 60, would be surplusage. Few judgments would be final.

By dismissing Vikas's original breach-of-contract suit, the district court relinquished its power over the controversy, retaining only the power to enforce the parties' settlement. Because the fraud claim doesn't fall within that retained jurisdiction, the court lacked the power to hear it, even if *a* federal court could hear that claim in a separate suit.

## B.

We turn now to the sanctions. If the district court meant to strike Vikas's *pleadings*, as the order states, then we must vacate that advisory judgment. It seems, though, that the court meant to deny all of Vikas's pending post-settlement *motions* as a litigation-ending sanction. In that case, the one-page order cannot support its severe penalty, so we vacate the order.

---

[5] *See, e.g.*, *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995) (noting that by "a final decision . . . a district court disassociates itself from a case").

[6] *See Goudelock v. McLemore*, 985 F. Supp. 2d 816, 818 (N.D. Miss. 2013) ("The fact that the same diversity which existed at the time of filing the original suit continues to the present is not enough to reopen a case dismissed with prejudice. If that were the case, almost any lawsuit . . . could be reopened after being dismissed . . . .").

1.

The district court purported to strike all Vikas's "pleadings." If the court really meant the *pleadings*, then there was nothing to strike. Vikas filed no pleadings in the post-settlement proceedings. It *moved* to enforce the settlement when Economy ceased its payments. But motions are not pleadings.[7] The court's order thus could have no effect.

Vikas's only pleadings live in its original suit for breach of contract. But the district judge already had dismissed that suit with prejudice. Dismissals with prejudice are final orders with preclusive effect. *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1155 (5th Cir. 2021). They end the suit and preclude its relitigation. An order striking pleadings in that suit could do nothing. That's especially clear here, where Vikas agreed to the dismissal, didn't appeal it, and didn't seek relief from it under Rule 60.[8]

Federal courts may not resolve questions that don't affect the parties before them. An order striking nonexistent pleadings does just that. If that's what the district judge meant, we vacate that order for lack of jurisdiction.[9]

2.

Despite the order's reference to "pleadings," both the district court and the parties thought that the order denied Vikas's pending *motions*,

---

[7] FED. R. CIV. P. 7(a); *see also Corrugated Container*, 752 F.2d at 144 ("The plaintiffs did not institute a separate lawsuit to enforce this [settlement]; they simply filed a motion in a seven-year-old class action suit.").

[8] *Cf. Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 417 (5th Cir. 2018); *see also* FED. R. CIV. P. 60(b).

[9] *See Church of Scientology v. United States*, 506 U.S. 9, 12 (1992); *see also Merkey v. Board of Regents*, 493 F.2d 790, 791 (5th Cir. 1974) (per curiam) ("Federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." (cleaned up)).

including its motion to enforce the settlement. But seen that way, the order must be vacated; the district court abused its discretion.

The district court never explained the legal basis for its order. But to levy a litigation-ending sanction for a discovery violation, the court must make four findings. *First*, the violation reflects bad faith or willfulness. *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019). *Second*, "the client," not counsel, "is responsible for the violation." *Id.* *Third*, the violation "substantially prejudiced the opposing party." *Id.* (cleaned up). *Fourth*, "a lesser sanction would not substantially achieve the desired deterrent effect." *Id.* at 758–59 (cleaned up).

A like standard controls where a court calls upon its inherent power to sanction the parties before it. We first decide, without deference, whether the court established "bad faith or willful abuse of the judicial process" by "clear and convincing proof." *In re Moore*, 739 F.3d 724, 729–30 (5th Cir. 2014) (cleaned up). If it did, we then "review the substance of the sanction itself . . . for an abuse of discretion." *Id.* at 730.

The order does not meet either standard. Recall that the order stated six reasons for the sanction:

- Vikas "exhausted two sets of lawyers";
- Vikas "entered and breached" its settlement with Economy;
- Vikas offered, as discovery, "tables of data that are unrelated to operating papers";
- Vikas "fabricated" data that it gave to the court;
- Vikas "lost" a hard drive that the court had ordered it to produce; and
- Vikas's director lied that he had a court appearance in India to excuse his failure to appear.

No. 20-20309

None of those conclusory statements supports the chosen sanction.

The first reason is baffling. The district judge *allowed* Vikas's counsel to withdraw. We can put the point no better than does Vikas's brief: "Having granted counsel leave to withdraw, the court should not later use its own grant of permission as the basis for sanctions."

The second reason is irrelevant. If Vikas breached the settlement, that would ground a claim by Economy or the denial, on the merits, of Vikas's motion to enforce the settlement. It would not support punishing Vikas for the temerity of trying to enforce its rights.

Third, the court apparently faulted Vikas's poor organization of documents it produced in discovery. That cannot support a finding of bad faith. For one thing, the record seems not to support the charge. Vikas did not dump thousands of unorganized documents on the court, as Economy suggests. Instead, Vikas explained its exhibits with summary charts and tables, as the court asked. But even if a lack of clarity in one's disclosures were a mortal sin at discovery, Vikas obviously tried to do what the court asked. That precludes a finding of bad faith.

The district court then says Vikas "fabricated" data that it gave to the court. But the court does not specify which data Vikas supposedly forged. Nor does the court point to any evidence for its accusation. We can't review that vague, conclusory statement. The district court must specify its basis. *Cf. Simon v. Honeywell, Inc.*, 642 F.2d 754, 756 (5th Cir. Apr. 1981).

Next, the court points to Vikas's loss of the hard drive that could have substantiated its settlement with NM. That loss is troubling. It may even reflect Vikas's bad faith. But the court made no finding of bad faith. In fact, the sanctions order made no findings of any kind; it merely stated the facts of the loss.

17

Even if we assumed that Vikas lost the hard drive in bad faith and that the loss prejudiced Economy, the chosen sanction was not appropriate because the district court did not meaningfully consider lesser sanctions. The only evidence that the court considered anything less than what it imposed is the bare statement, made from the bench and without elaboration, that monetary sanctions would be "an empty gesture."

To be sure, the judge did warn Vikas of the sanction he imposed, and the failure of express warnings could allow the court to find that a lesser sanction would not "substantially achieve the desired deterrent effect." *Law Funder*, 924 F.3d at 758–59 (cleaned up). But again, the district court never made that finding. It did not try lesser sanctions, and it did not explain, in its scrimpy order, why lesser sanctions would fail. To take one example, we see no reason why the court could not have treated the agreement with NM as bogus because of its loss—akin to a spoliation instruction—and proceeded to the merits of Vikas's motion to enforce the settlement. *Cf.* Fed. R. Civ. P. 37(e)(2)(A).

Last, the district court claimed that Agarwal, Vikas's director, made up a conflicting proceeding in India to excuse his nonappearance at a status conference. We repeat ourselves; the court does not substantiate its serious accusation, which Vikas promptly challenged. Searching the record, we find no support for it besides the court's assertion and the speculation of NM's counsel.

Sanctions are serious business. That's why we review them with care and demand equal care from the courts that issue them. The district judge did not fulfill that duty here. He issued a scanty order of barely 160 words to justify a sanction that terminated Vikas's power to enforce a settlement on which tens of millions of dollars turn. The order cites facts that lack support in the record, are inapposite or immaterial, or both. And though the court

repeatedly imputes bad faith to Vikas, the court's "suspicions," devoid of any explanation of the facts on which they are based, "do not add up to clear and convincing evidence of . . . bad faith." *Moore*, 739 F.3d at 731. Nor does bad faith, when present, excuse the court from choosing lesser sanctions that would do the job.

Vikas may well deserve sanctions. But we cannot find the facts that the district judge should have found to support them. *See Montano*, 867 F.3d at 546 ("A court of appeals sits as a court of review, not of first view." (cleaned up)). We thus vacate the court's order and remand.

## IV.

One matter remains: the ruling that Vikas breached the settlement. Because the district court hardly explains the grounds for its ruling, we vacate and remand for further findings of fact.

### A.

When a district court retains jurisdiction to enforce a settlement, the court, not a jury, finds the facts. *Corrugated Container*, 752 F.2d at 144. We thus review for abuse of discretion. *Wise*, 955 F.3d at 434. "A district court abuses its discretion if it (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc) (cleaned up).

When enforcing a settlement, a district court must make findings of fact and draw conclusions of law. *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176 (5th Cir. 1975); *see also* Fed. R. Civ. P. 52(a) (for the general rule). The findings of fact must show "the factual basis for the ultimate conclusion reached by the court." *S.S. Silberblatt, Inc. v. United States*, 353 F.2d 545, 549 (5th Cir. 1965) (cleaned up). The parties cannot waive those require-

ments,[10] because they ensure that we can meaningfully review the district court's judgment.[11] If the sparseness of the findings inhibits our review, we usually vacate and "remand . . . to permit the trial court to make the missing findings."[12] But if the record leaves no doubt that the court is correct, we may affirm without remanding the case. *See, e.g.*, *Whitley v. Rd. Corp.*, 624 F.2d 698, 700 (5th Cir. 1980).

Texas law governs our construction of the settlement. *McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013). We first must interpret the contract ourselves, without deference to the district court, and decide "whether the contract is enforceable as written, without resort to parol evidence." *Id.* (cleaned up). Only if the contract is ambiguous, we review for clear error the court's findings of fact regarding the parties' objective intent. *Id.*

### B.

The district court's scanty order does not do justice to this complex and costly dispute. The court never analyzes the parties' settlement, and the findings of fact are either clearly erroneous or shed no light on the relevant issues. We thus vacate and remand for further findings of fact.

The district court excused Economy from performing the settlement because of three supposed breaches by Vikas. *First*, Vikas didn't pay NM by

---

[10] 9C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2574 (3d ed. 2008 & Supp. 2021).

[11] *Id.*; *see also* 1 Steven Alan Childress & Martha S. Davis, Federal Standards of Review § 2.11 (3d ed. 1999) (noting that Rule 52(a) permits two types of challenges to findings of fact: (1) the findings are clearly erroneous; and (2) the findings are "missing or legally faulty").

[12] *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982); *see also Sylvester v. Callon Energy Servs., Inc.*, 724 F.2d 1210, 1216–17 (5th Cir. 1984) (for an example of that practice).

the end of 2014. *Second*, Vikas didn't disclose its settlement with NM by that time. *Third*, Vikas didn't pay NM in full. "The settlement is clear," the court concluded. "One breach excuses performance by the non-breaching party. Three breaches by Vikas are compellingly clear—Economy has no further obligation under the settlement."

But the first two breaches hinge on the last. That's because the settlement entitled Vikas to cure the first two breaches within fifteen days after notice from Economy of its default. And after Economy told Vikas to prove it had complied with the settlement, Vikas responded within fifteen days with the NM accord, plus financial records purporting to show that it paid NM in full. Inexplicably, the district court ignored that cure provision, despite acknowledging that Vikas disclosed the NM accord to Economy in mid-2015.

Everything depends, then, on whether NM was "paid in full" as the settlement required. The court thought not and made three statements to that effect. *First*, the court proclaimed that "nothing about Vikas's accord with [NM] constitutes payment in full." *Second*, the court explained that "Economy gave Vikas money" under the settlement "to pay the suppliers," so Vikas breached the settlement by holding that money. *Third*, the court averred that Vikas made *no* payments to NM at all.

The first finding is hopelessly vague. We have "no clue as to the bases of the trial judge's decision." *Simon*, 642 F.2d at 756. The district court could mean that the settlement between Vikas and Economy required Vikas to pay the suppliers in full *and in cash*. And because the NM accord includes non-cash payments, that reading would go, Vikas breached the settlement. Economy argues that point here. The court also could mean that the NM accord shows *on its face* that Vikas didn't pay NM in full, no matter how one defines "paid in full." But either point would demand explanation and findings of fact, which the court did not provide.

No. 20-20309

Those deficiencies would not matter if the settlement required payment in cash as a matter of law. In that case, the record would dictate affirmance. But the settlement does not require that. The settlement says only that the suppliers must be "paid in full." It does not specify what form that payment must take. Contrary to Economy's protestations, the word "paid" need not mean "paid in cash" under Texas law.[13] Though it *could* mean that in the right context,[14] we cannot extract a requirement of cash payment from the settlement's other terms.

Economy contends, for example, that because it promised Vikas cash under the settlement, Vikas must have promised the same to the suppliers. We see it differently: The settlement specified *only Economy's* form of payment. That suggests that the unadorned phrase "paid in full," addressing Vikas's duty to its suppliers, requires just that: payment *in full.*

Because the settlement does not say how Vikas must pay the suppliers, the court should have consulted circumstantial evidence to ascertain the parties' "objective intent" regarding the proper form of payment. *URI*, 543 S.W.3d at 768. The court might have looked to trade custom, trade usage, and other facts tending to inform the contract's meaning. Some of that evidence favors Vikas.

---

[13] *See First Heights Bank, FSB v. Gutierrez*, 852 S.W.2d 596, 605 (Tex. App.—Corpus Christi 1993, writ denied) ("Payment is defined as the discharge of an obligation by the actual or constructive delivery of money *or its equivalent* by the obligor or by someone for him for the purpose of extinguishing the obligation, wholly or partially, and the acceptance of it by the obligee." (emphasis added)); *see also Holland v. Holland*, 357 S.W.3d 192, 197–98 (Tex. App.—Dallas 2012, no pet.) (adopting *First Heights*'s and similar definitions of "payment"); 58 Tex. Jur. 3d Payment § 24 (3d ed. 2021 update) ("The word 'payment,' in the broadest sense, signifies the satisfaction of an obligation.").

[14] *See URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 764 (Tex. 2018) ("Words must be construed in the context in which they are used." (cleaned up)).

The court did none of that. Instead, it treated Economy's *subjective* intent as decisive. That was an abuse of discretion. Nothing in the settlement requires Vikas to use Economy's cash settlement payments to pay its suppliers. A court may not use one party's subjective intent to "interpolate constraints not found in the contract's unambiguous language." *Id.* at 758. Also, Economy's subjective intent is hardly relevant. What Economy hoped or intended for the dollars that it paid Vikas does not tell us how the settlement defines Vikas's *separate* duty to ensure its suppliers are "paid in full."

Finally, the district court purported to find that Vikas *never* paid NM. "On June 17, 2015," the court claimed, "Economy discovered that no payments, in cash or in kind, had *ever been made* by Vikas" to NM (emphasis added).

The record cannot support that finding. In June 2015, the only evidence that Vikas had not paid the suppliers was the sworn testimony of Gupta, NM's representative. Yet that testimony states that Vikas had paid at least in part for the relevant orders of guar. The court did not address that evidence or offer any factual basis for its holding. Nor did the court explain why it discounted Vikas's evidence that it had sent NM truckloads of guargum splits as a payment in kind under their accord. That evidence may deserve the cold shoulder, but the court must explain why.

## C.

The district court ruled that Vikas had breached the settlement. That ruling may well be sound,[15] but we cannot affirm on the flimsy grounds supplied. The judge must explain his rulings so that the parties can have meaningful review in this court. *See, e.g.*, *Browning v. Kramer*, 931 F.2d 340, 344

---

[15] By this, we do not mean to opine on the ultimate merits of the ruling.

(5th Cir. 1991).

We thus vacate and remand the ruling on breach of contract for further factfinding. We direct the district court to resolve at least two questions: (1) whether the objective circumstances surrounding the settlement, *cf. URI*, 543 S.W.3d at 768–69, show that the phrase "paid in full" permits payments in kind; and (2) whether Vikas paid NM in full.

\* \* \* \* \*

In summary:

We VACATE the summary judgment for fraud because the district court lacked the power to issue it. Vikas also appeals damages and interest awarded on that judgment; those appeals are DENIED AS MOOT.

We VACATE the sanctions order (1) for lack of jurisdiction, insofar as it struck Vikas's pleadings in its long-dismissed suit for breach of contract; and (2) for abuse of discretion, insofar as it denied Vikas's pending post-settlement motions. Vikas's appeal from the court's refusal to reconsider the sanctions order is therefore DENIED AS MOOT.

We VACATE and REMAND, for further findings of fact consistent with this opinion, the ruling that Vikas breached the settlement.

No. 20-20309

PATRICK E. HIGGINBOTHAM, *Circuit Judge*, concurring:

I concur in this opinion except as to Section III.B.2. In my view, the district court struck only Vikas's pleadings, over which the district court lacked jurisdiction. The district court did not impose a litigation-ending sanction as evidenced by the ligation's continuance until the district court's order granting summary judgment to Economy on the grounds that Vikas violated the settlement agreement.

Even if the district court had intended to impose a litigation-ending sanction, I would find that Vikas's conduct rose to the level of bad faith. And the district court determined that, due to past warnings that failed to deter Vikas's inappropriate conduct, lesser sanctions would not have achieved the desired deterrent effect.

I therefore would only vacate the sanctions order for lack of jurisdiction.